**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Neal J. Deckant (State Bar No. 322946)
Brittany S. Scott (State Bar No. 327132)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
          ndeckant@bursor.com
          bscott@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
2665 S. Bayshore Dr., Suite 220
Miami, FL  33133
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
E-Mail: scott@bursor.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA STEWART and JOHN D. KELLER, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| CAMELBAK PRODUCTS, LLC and CAMELBAK INTERNATIONAL, LLC, | |
| Defendants. | |

1        Plaintiffs Jessica Stewart and John D. Keller ("Plaintiffs"), individually and on behalf of

2    themselves and all others similarly situated, by and through their attorneys, make the following

3    allegations pursuant to the investigation of their counsel and based upon information and belief,

4    except as to allegations specifically pertaining to themselves and their counsel, which are based on

5    personal knowledge.

6                                **NATURE OF THE ACTION**

7        1.       This is a class action suit brought against Defendants CamelBak Products, LLC

8    ("CamelBak Products") and CamelBak International, LLC ("CamelBak International")

9    (collectively, "CamelBak") for manufacturing, distributing, and selling defective CamelBak eddy

10   Water Bottles, including the CamelBak eddy Water Bottle 32 oz, CamelBak eddy Water Bottle 25

11   oz, CamelBak eddy Water Bottle 20 oz, Camelbak eddy Kids Water Bottle 12 oz, CamelBak Kids

12   Vacuum Insulated Stainless Water Bottle 12 oz, CamelBak eddy Kids Insulated Water Bottle 12

13   oz, CamelBak eddy Insulated Water Bottle 20 oz, CamelBak eddy Vacuum Insulated Stainless

14   Water Bottle 20 oz, and CamelBak eddy Glass Water Bottle 24 oz (collectively, the "CamelBak

15   eddy").

16       2.       CamelBak warranted that the CamelBak eddy is "spill-proof."  Among other

17   representations, CamelBak claims that consumers who purchase the CamelBak eddy will "[e]njoy

18   spill-proof sipping at work or on the trail."  However, the design of the CamelBak eddy – which

19   "use[s] patented bite valves" to "prevent leaks and allow easy sipping" – is fundamentally

20   defective.  The bottles are not "spill-proof" because water may run, flow, or fall out of the bottles

21   (*i.e.* leak).

22       3.       Plaintiffs bring this action on behalf of themselves and a class of all similarly

23   situated purchasers of the CamelBak eddy in the United States for:  (i) violation of the Magnuson-

24   Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*; (ii) breach of express warranty; (iii) breach of the

25   implied warranty of merchantability; (iv) unjust enrichment; (v) violation of California's

26   Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq.*; (vi) violation of

27   California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

28   (vii) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et*

1  *seq.*; (viii) negligent misrepresentation; (ix) fraud; (x) violation of New York's General Business

2  Law ("GBL") § 349; and (xi) violation of New York's General Business Law ("GBL") § 350.

3  **PARTIES**

4      4.      Plaintiff John D. Keller is a natural person and citizen of the State of New York who

5  resides in Churchville, New York.  On January 5, 2018, Plaintiff Keller purchased a CamelBak

6  eddy Water Bottle 25 oz for $12.82 from Amazon.com.  Prior to his purchase, Plaintiff Keller

7  reviewed the labeling, packaging, and marketing materials for the CamelBak eddy and saw the

8  representation that it is purportedly "spill-proof."  Plaintiff Keller understood these claims to be

9  representations and warranties by Defendants that the CamelBak eddy is purportedly "spill-proof"

10  and free of defects that would cause water to run, flow, or fall out of the bottle (*i.e.*, leak).  Plaintiff

11  Keller reasonably relied on Defendants' representation that the CamelBak eddy is "spill-proof"

12  when he purchased the CamelBak eddy.  However, Plaintiff Keller's water bottle is defective

13  because it leaks and has actually leaked during prior use.  Plaintiff Keller's water bottle leaks when

14  placed sideways.  It also leaks when placed in backpacks or bags.  Plaintiff Keller relied on these

15  representations and warranties in deciding to purchase the CamelBak eddy, and these

16  representations were part of the basis of the bargain, in that he would not have purchased the

17  CamelBak eddy if he had known that it was not, in fact, "spill-proof."  Plaintiff Keller also

18  understood that in making the sale, the retailer was acting with the knowledge and approval of

19  CamelBak and/or as the agent of CamelBak.  Plaintiff Keller also understood that his purchase

20  involved a direct transaction between himself and CamelBak, because his CamelBak eddy came

21  with packaging and other materials prepared by CamelBak, including representations and

22  warranties that his CamelBak eddy is purportedly "spill-proof."

23      5.      Plaintiff Jessica Stewart is a natural person and citizen of the State of California who

24  resides in Oakland, California.  On September 13, 2017, Plaintiff Stewart purchased two 12 oz

25  CamelBak eddy Kids Water Bottles for $13.00 and $12.99 from Amazon.com.  Prior to her

26  purchase, Plaintiff Stewart reviewed the labeling, packaging, and marketing materials for the

27  CamelBak eddys and saw the representation that they were purportedly "spill-proof."  Plaintiff

28

Stewart understood these claims to be representations and warranties by Defendants that the CamelBak eddy is purportedly "spill-proof" and free of defects that would cause water to run, flow, or fall out of the bottle (*i.e.*, leak).  Plaintiff Stewart reasonably relied on Defendants' representation that the CamelBak eddy is "spill-proof" when she purchased the CamelBak eddys. However, Plaintiff Stewart's water bottles are defective because they leak and have actually leaked during prior use.  Plaintiff Stewart's water bottles leak when placed sideways.  They also leak when placed in backpacks or bags.  The bottles have also leaked while flying.  Plaintiff Stewart relied on these representations and warranties in deciding to purchase the CamelBak eddys, and these representations were part of the basis of the bargain, in that she would not have purchased the CamelBak eddys if she had known they were not, in fact, "spill-proof."  Plaintiff Stewart also understood that in making the sale, the retailer was acting with the knowledge and approval of CamelBak and/or as the agent of CamelBak.  Plaintiff Stewart also understood that her purchase involved a direct transaction between herself and CamelBak, because the CamelBak eddys came with packaging and other materials prepared by CamelBak, including representations and warranties that the CamelBak eddys are purportedly "spill-proof."

5.     Defendant CamelBak Products, LLC is a Delaware limited liability company with its principal place of business at 2000 South McDowell Suite 200, Petaluma, California.  CamelBak Products does business throughout California and the entire United States.  CamelBak Products is a market leader in hydration products, such as hydration packs and water bottles.

6.     Defendant CamelBak International, LLC is a California limited liability company with its principal place of business at 2000 South McDowell Suite 200, Petaluma, California. Camel International is 100% owned by CamelBak Products, LLC.  CamelBak International does business throughout California and the entire United States.  CamelBak International is a market leader in hydration products, such as hydration packs and water bottles.

7.     Defendants jointly make decisions regarding the marketing, advertising, packaging, manufacture, and design of the CamelBak eddy.  Defendants share a social media presence on Facebook and Instagram, where they collectively refer to themselves as "CamelBak."  CamelBak International does not maintain an independent social media account.  Similarly, Defendants run a

single LinkedIn account under the name "CamelBak."  Defendants' job listings do not distinguish between CamelBak Products and CamelBak International.  Finally, Defendants share a retail presence.  Their products are simply listed under "CamelBak" on retail websites.  Further, the CamelBak eddys are physically branded with the singular term "CamelBak," and do not include reference to CamelBak Products or CamelBak International as individual entities.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and a least one member of the proposed class is a citizen of a state different from Defendants.

9.      This Court has personal jurisdiction over Defendants because they have continuous and systematic contacts with the State of California as to essentially render them "at home" in this State, and Defendants' principal places of business are located in this State.  Moreover, Defendants have purposefully availed themselves of the laws and benefits of doing business in this State, and Plaintiffs' claims arise out of the Defendants' forum-related activities.  Furthermore, a substantial portion of the events giving rise to Plaintiffs' claims occurred in this State, including Plaintiff Stewart's purchase of the CamelBak eddy.

10.      Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.  Plaintiff Stewart resides in this District and purchased two CamelBak eddys in this District.  Moreover, Defendants' principal place of business is located in this District.

## COMMON FACTUAL ALLEGATIONS

**A.      CamelBak Repeatedly Misrepresents That The CamelBak Eddy Is "Spill-Proof"**

11.      The representation that the CamelBak eddy is "spill-proof" is core to Defendants' marketing for the CamelBak eddy, and it appears throughout the product's labeling and packaging.

12.     For example, Defendants' marketing materials for the CamelBak eddy contains a video from March 2, 2016, which states that "all CamelBak eddy bottles come with our spill-proof bite valve."  It goes on to state that "all bottles are spill-proof."



13.     Additionally, the CamelBak eddy is packaged for distribution with a cardboard hangtag. The cardboard hangtag states that the CamelBak eddy is "spill proof:"



14.     The claim that CamelBak eddy has a "spill-proof bite valve" appears on all CamelBak eddy packaging:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16      15.     CamelBak's website claims that consumers of the CamelBak eddy will "[e]njoy

17  spill-proof sipping."

18
19

## DESCRIPTION

20  Enjoy spill-proof sipping at work or on the trail with the 0.75-liter
21  CamelBak eddy® water bottle. 100% free of BPA, BPS and BPF.

22
23      16.     Similarly, Defendants' website features the following "specification" for the

24  CamelBak eddy:

25

26  **CLOSURE:**                                          Spill-Proof

27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17.     Commercial retailers also consistently and prominently represent that the CamelBak eddy is "spill-proof" on their retail websites.  For example, Target's website includes "spill-proof" as a feature of the product:

**Highlights**
- 100% free of BPA, BPS and BPF
- Holds 25oz/.75L
- Spill-proof
- Dishwasher Safe: All parts are top-rack dishwasher safe

Amazon features a similar representation "from the manufacturer:"

  

Design!          Spill-Proof          Integrated
                 Water Bottle         Carry Loop

Bed Bath & Beyond's retail website also contains this representation:

**Details**

Keep your child happy without worrying about spills when he or she sips from the CamelBak Kid's eddy Goal! Water Bottle. Adorned with a fun airplane graphic, this water bottle features a one-piece drink valve that is a step up from a sippy cup.

- CamelBak Kid's eddy Water Bottle is a great step up from your little one's sippy cup
- Spill-proof

18.     Each of these representations are false and misleading. As discussed below, the CamelBak eddy is not "spill-proof" because it leaks.

**B.**   **Defendants Are Aware That The CamelBak Eddy Is Not "Spill-Proof"**

19.   The Internet is replete with consumer complaints about the CamelBak eddy leaking.

For example, five years ago, one victim wrote on CamelBak's website:

> I purchased mine in October or November of 2013 and the spout and lid
> have both been acting up for the past few months.  If I fill the bottle up
> to high, it leaks.  If it's empty and I flip it upside down, it leaks.  Even if
> I re-position the straw and make sure everything is tightly in place, IT
> LEAKS!  If I haven't drank from the bottle in say 10-15 minutes and
> press the chew valve, water comes flowing out like crazy.

Four years ago, on CamelBak's website, another victim wrote:

> [T]he straw leaks a lot and renders it useless!  Buy a different
> camelback!

Six years ago, on May 29, 2013, CamelBak responded to a complaint by a third victim, who wrote:

> I have a Camelbak Eddy, it is leaking so much, my kids can't take it to
> school.  What is your return policy.

On November 20, 2013, CamelBak responded to a fourth victim, who wrote:

> [M]y girls have many camelbak eddys and they all leak, how do I go
> about fixing this?  Thanks!

Similarly, on March 24, 2015, CamelBak responded to a complaint made by a fifth victim, who

wrote:

> [H]ey Camelbak!  just wondering why your Eddy water bottles leak?
> I've had three... two of which started leaking out the top in a few
> months, and the latest one within a few days.  I'm not really into picking
> up a water bottle and discovering it's left a puddle.. and then having it
> leak all over me. stop ripping off your customers please!

On April 1, 2016, a sixth victim wrote:

> I have 3 camelbak water bottles that continue to leak!  I was under the
> understanding that these bottles were indestructible and the best,
> however with a constantly leaky bottle, I am having hard time buying
> this concept!

20.   The above reviews are just a sampling of negative feedback consumers have left

Defendants about their leaking CamelBak eddy water bottles.

21.   Like most companies who offer customers an opportunity to post reviews on their

websites and social media platforms, Defendants regularly monitor online customer reviews

because they provide valuable data regarding quality control issues, customer satisfaction, and marketing analytics.  Like most manufacturers, Defendants pay particular attention to poor and negative reviews.  As such, Defendants were aware of the above-referenced consumer complaints shortly after each complaint was posted.

22.     Defendants pay close attention when customers make similar complaints about a product, as repeated complaints may indicate a systematic problem.  Defendants also know that it is often the case that for every person who complains about a defect, there are additional consumers who experience the same defect but who did not complain.  Here, the reports and complaints put Defendants on notice of the defect in the water bottles.

23.     The failure to disclose this defect is a material omission to which Defendants had exclusive knowledge of and was not known to Plaintiffs or class members.

24.     Defendants made partial representations to Plaintiffs and class members while suppressing the defect in the CamelBak eddy water bottles.  Specifically, by displaying the CamelBak eddy water bottles and describing its features and use, the product packaging implied that the CamelBak eddy would not leak, without disclosing that the water bottles were not "spill-proof."

25.     As addressed above, Defendants are aware of these complaints, and know that the CamelBak eddy is prone to leaking.  For example, in a document created on August 28, 2012, Defendants have acknowledged that the CamelBak eddy leaks when exposed to a change in altitude:

> **Can I use the CamelBak® eddy™ in high-altitude/ low-pressure environments (i.e. airplanes, mountain altitudes, etc)?**
> Yes, but with special care because pressure can force liquid out through the straw.  Keep the bottle right side up with the bite valve in the closed position.  Remove the straw for additional protection. Expect a bit of "spurt" during the first sip.|You may also twist the cap open to release any pressure and then close before your first sip.

Similar language still appears on Defendants' website as of October 17, 2019.

26.     On October 4, 2013, Defendants posted a link to their Facebook page, telling CamelBak users to "take care" while flying with their water bottles and "at cruising altitude, [to] release pressure by loosening cap or sipping frequently to avoid the <u>fountain effect</u>!"

27.     Furthermore, Defendants' online Frequently Asked Questions ("FAQ") even contains a section on the CamelBak eddy leaking:

QUESTION
# HOW CAN I FIX MY LEAKY WATER BOTTLE?

## ANSWER

If your eddy bottle is leaking, you might have an object trapped in the vent valve. Turn the cap over, and look under the round, grey, rubber flap. If you carefully peel back the rubber seal and clean out the inner workings of the vent valve, the leak should stop. Important: Don't remove the rubber gasket for cleaning purposes, because it's impossible to reattach.

Variations of this FAQ have been available since at least 2013.

28.     Despite Defendants' knowledge of the leaking defect, they have not recalled the bottles or otherwise sought to remedy the fact that the bottles are not "spill-proof." Instead, Defendants continue to prominently market the CamelBak eddy with the claim that the product is "spill-proof."

## CLASS ACTION ALLEGATIONS

29.     Plaintiffs seek to represent a class defined as all persons in the United States who purchased a CamelBak eddy (the "Class"). Excluded from the Class are persons who made such purchases for the purpose of resale.

30.     Plaintiff Stewart also seeks to represent a subclass of all Class members who purchased a CamelBak eddy in the State of California (the "California Subclass").

31.     Plaintiff Keller also seeks to represent a subclass of all Class members who purchased a CamelBak eddy in the State of New York (the "New York Subclass").

32.     Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the millions. The precise number of Class members and their identities are unknown to Plaintiffs at this time but may

be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants.

33.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to, whether Defendants' labeling, marketing, and advertising is false and misleading; whether Defendants have violated the Magnusson-Moss Warranty Act 15 U.S.C. 2301, *et seq.*; whether Defendants have violated California's Consumers Legal Remedies Act, Civil Code §§ 1750, *et seq.*; whether Defendants have violated California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq.*, and have committed other tortious acts as described herein.

34.     The claims of the named Plaintiffs are typical of the claims of the Class in that the named Plaintiffs purchased CamelBak eddys in reliance on the representations and warranties described above and suffered a loss as a result of that purchase.

35.     Plaintiffs are  adequate representatives of the Class and Subclasses because their interests do not conflict with the interests of the Class and Subclass members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

36.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment

of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues

37.     Plaintiffs bring all claims in this action individually and on behalf of members of the Class and Subclasses against Defendants.

<u>COUNT I</u>
**(Violation Of The Magnusson-Moss Warranty Act,**
**15 U.S.C. §§ 2301, *et seq*.)**

38.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

39.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and the California and New York Subclasses against Defendants.

40.     The CamelBak eddy is a consumer product as defined in 15 U.S.C. § 2301(1).

41.     Plaintiffs and Class members are consumers as defined in 15 U.S.C. § 2301(3).

42.     Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

43.     In connection with the sale of the CamelBak eddy, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), which warranted that the CamelBak eddy was "spill-proof."

44.     In fact, the CamelBak eddy is defective because it leaks.

45.      By reason of Defendants' breach of warranties, Defendants violated the statutory rights due Plaintiffs and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, thereby damaging Plaintiffs and Class members.

46.     Plaintiffs and Class members were injured as a direct and proximate result of Defendants' breach because:  (a) they would not have purchased the CamelBak eddy on the same terms if the true facts were known about the product; (b) they paid a price premium for the CamelBak eddy due to Defendants' promises that it was "spill-proof;" and (c) the CamelBak eddy did not have the characteristics as promised by Defendants.

**COUNT II**
**(Breach Of Express Warranty)**

47.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

48.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and the California and New York Subclasses against Defendants.

49.     Defendants, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the CamelBak eddy is "spill-proof."

50.     In fact, CamelBak eddy is not fit for such purpose because each of these express warranties are false and misleading.

51.     As a direct and proximate cause of Defendants' breach of express warranty, Plaintiffs and Class members have been injured and harmed because:  (a) they would not have purchased the CamelBak eddy on the same terms if the true facts were known about the product; (b) they paid a price premium for the CamelBak eddy due to Defendants' promises that it was "spill-proof;" and (c) the CamelBak eddy did not have the characteristics as promised by Defendants.

**COUNT III**
**(Breach Of Implied Warranty Of Merchantability)**

52.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

53.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and California and New York Subclasses against Defendants.

54.     Defendants, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the CamelBak eddy is "spill-proof."

55.     Defendants breached the warranty implied in the contract for the sale of the CamelBak eddy because they could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, the goods were not fit for the ordinary purposes for which such goods are used, and the goods do not conform to the

promises or affirmations of fact made on the label.  As a result, Plaintiffs and Class members did not receive the goods as impliedly warranted by Defendants to be merchantable.

56.     Plaintiffs and Class members purchased the CamelBak eddy in reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose.

57.     The CamelBak eddy was not altered by Plaintiffs or Class members.

58.     The CamelBak eddy was defective when it left the exclusive control of Defendants.

59.     Defendants knew that the CamelBak eddy would be purchased and used without additional testing by Plaintiffs and Class members.

60.     The CamelBak eddy was defectively designed and unfit for its intended purpose, and Plaintiffs and Class members did not receive the goods as warranted.

61.     As a direct and proximate cause of Defendants' breach of express warranty, Plaintiffs and Class members have been injured and harmed because:  (a) they would not have purchased the CamelBak eddy on the same terms if the true facts were known about the product; (b) they paid a price premium for the CamelBak eddy due to Defendants' promises that it was "spill-proof;" and (c) the CamelBak eddy did not have the characteristics as promised by Defendants.

## COUNT IV
### (Unjust Enrichment)

62.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

63.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and California and New York Subclasses against Defendants.

64.     Plaintiffs and Class members conferred benefits on Defendants by purchasing the CamelBak eddy.

65.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class members' purchases of the CamelBak eddy.  Retention of those moneys under these circumstances is unjust and inequitable because Defendants misrepresented that the

CamelBak eddy is "spill-proof." This misrepresentation caused injuries to Plaintiffs and Class members, because they would not have purchased the CamelBak eddy if the true facts were known.

66.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and Class members for its unjust enrichment, as ordered by the Court.

### COUNT V
### (Violation Of California's Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.*)

67.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

68.     Plaintiff Stewart bring this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

69.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

70.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(7), prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

71.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(9), disallows "[a]dvertising goods or services with intent not to sell them as advertised."

72.     Defendants violated this provision by misrepresenting that the CamelBak eddy is "spill-proof."

73.     Plaintiff Stewart and the California Subclass suffered injuries caused by Defendants because: (a) they would not have purchased the CamelBak eddy on the same terms if the true facts were known about the product; (b) they paid a price premium for the CamelBak eddy due to Defendants' promises that it was "spill-proof;" and (c) the CamelBak eddy did not have the characteristics as promised by Defendants.

74.     On or about January 10, 2020, prior to filing this action, CLRA notice letters were served on Defendants, which complies in all respects with California Civil Code § 1782(a). Plaintiff Stewart sent CamelBak Products and CamelBak International letters via certified mail, return receipt requested, advising Defendants that they are in violation of the CLRA and demanding that they cease and desist from such violations and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff Stewart's letter is attached hereto as Exhibit A.

75.     Wherefore, Plaintiff Stewart seeks compensatory damages, punitive damages, attorneys' fees, and restitution of any ill-gotten gains due to Defendants' acts and practices in violation of the CLRA.

## COUNT VI
### (Violation Of California's Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.)*

76.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

77.     Plaintiff Stewart brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

78.     Defendants are subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

79.     Defendants' misrepresentations and other conduct, described herein, violated the "unlawful" prong of the UCL by violating the CLRA as described herein; the FAL as described herein; and Cal. Com. Code § 2607.

80.     Defendants' misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

81.     Defendants violated the "fraudulent" prong of the UCL by making misrepresentations about the CamelBak eddy, as described herein.

82.     Defendants' violation has continuing and adverse effects because Defendants' unlawful conduct is continuing, with no indication that Defendants intend to cease this fraudulent course of conduct.  The public – and class members – are subject to ongoing harm because the deceptive and misleading "spill-proof" claims are still in use by Defendants today.

83.     Plaintiff Stewart and the California Subclass lost money or property as a result of Defendants' UCL violations because:  (a) they would not have purchased the CamelBak eddy on the same terms if the true facts were known about the product; (b) they paid a price premium for the CamelBak eddy due to Defendants' promises that it was "spill-proof;" and (c) the CamelBak eddy did not have the characteristics as promised by Defendants.

## COUNT VII
### (Violation Of California's False Advertising Law,
### California Business & Professions Code §§ 17500, *et seq.)*

84.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

85.     Plaintiff Stewart brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

86.     California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, … in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

87.     Defendants committed acts of false advertising, as defined by §17500, by misrepresenting that the CamelBak eddy is "spill-proof."

88.     Defendants knew or should have known, through the exercise of reasonable care that their representations about the CamelBak eddy were untrue and misleading.

89.     Defendants' actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

90.     Plaintiff Stewart and the California Subclass lost money or property as a result of Defendants' FAL violations because:  (a) they would not have purchased the CamelBak eddy on the same terms if the true facts were known about the product; (b) they paid a price premium for CamelBak eddy due to Defendants' promises that it was "spill-proof;" and (c) the CamelBak eddy did not have the characteristics as promised by Defendants.

## COUNT VIII
### (Negligent Misrepresentation)

91.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

92.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and California and New York Subclasses against Defendants.

93.     As discussed above, Defendants misrepresented that the CamelBak eddy is "spill-proof."

94.     At the time Defendants made these representations, Defendants knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

95.     At an absolute minimum, Defendants negligently misrepresented and/or negligently omitted material facts about the CamelBak eddy.

96.     The negligent misrepresentations and omissions made by Defendants, upon which Plaintiffs and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class members to purchase the CamelBak eddy.

97.     Plaintiffs and Class members would not have purchased the CamelBak eddy if the true facts had been known.

98.     The negligent actions of Defendants caused damage to Plaintiffs and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT IX
### (Fraud)

99.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

100.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and California and New York Subclasses against Defendants.

101.     As discussed above, Defendants provided Plaintiffs and Class members with false or misleading material information and failed to disclose material facts about the CamelBak eddy being "spill-proof."  These misrepresentations and omissions were made with knowledge of their falsehood.

102.     The misrepresentations and omissions made by Defendants, upon which Plaintiffs and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class members to purchase the CamelBak eddy.

103.     The fraudulent actions of Defendants caused damage to Plaintiffs, Class members, and Subclass members who are entitled to damages and other legal and equitable relief as a result.

## COUNT X
### (Violation of New York's General Business Law § 349)

104.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

105.     Plaintiff Keller brings this claim individually and on behalf of the members of the New York Subclass against Defendants.

106.     New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

107.     In its sale of goods throughout the State of New York, Defendants conduct business and trade within the meaning and intendment of New York's General Business Law § 349.

108.     Plaintiff Keller and members of the New York Subclass are consumers who purchased products from Defendants for their personal use.

109.     By the acts and conduct alleged herein, Defendants have engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, misrepresenting that the CamelBak eddy is "spill-proof" as stated on its packaging.

110.     The foregoing deceptive acts and practices were directed at consumers.

111.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics of the CamelBak eddy to induce consumers to purchase same.

112.     By reason of this conduct, Defendants engaged in deceptive conduct in violation of New York's General Business Law.

113.     Defendants' action is the direct, foreseeable, and proximate cause of the damages that Plaintiff Keller and members of the New York Subclass have sustained from having paid for and used Defendants' products.

114.     As a result of Defendants' violations, Plaintiff Keller and members of the New York Subclass have suffered damages because: (a) they would not have purchased the CamelBak eddy on the same terms if they knew that the "spill-proof" claims were not true; (b) they paid a price premium for the CamelBak eddy due to the "spill-proof" claims; and (c) the CamelBak eddy does not have the characteristics, uses, benefits, or quantities as promised in that it is not "spill-proof."

115.     On behalf of himself and other members of the New York Subclass, Plaintiff Keller seeks to recover his actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT XI
### (Violation Of New York's General Business Law § 350)

116.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

117.     Plaintiff Keller brings this claim individually and on behalf of the members of the New York Subclass against Defendants.

118.    New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

119.    Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

120.    Based on the foregoing, Defendants have engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of New York's General Business Law.

121.    Defendants' false, misleading, and deceptive statements and representations of fact were and are directed to consumers.

122.    Defendants' false, misleading, and deceptive statements and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

123.    Defendants' false, misleading, and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

124.    As a result of Defendants' false, misleading, and deceptive statements and representation of fact, Plaintiff Keller and the New York Subclass have suffered and continue to suffer economic injury.

125.    As a result of Defendants' violations, Plaintiff Keller and members of the New York Subclass have suffered damages due to said violation because: (a) they would not have purchased the CamelBak eddy on the same terms if they knew that the "spill-proof" claims were not true; (b) they paid a price premium for the CamelBak eddy due to the  "spill-proof" claims; and (c) the CamelBak eddy does not have the characteristics, uses, benefits, or quantities as promised in that the CamelBak eddy is not "spill-proof."

126.    On behalf of himself and other members of the New York Subclass, Plaintiff Keller seeks to recover his actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

1

## **PRAYER FOR RELIEF**

2          WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek

3   judgment against Defendants, as follows:

4          a.   For an order certifying the nationwide Class the California Subclass,
                and the New York Subclass under Rule 23 of the Federal Rules of
5               Civil Procedure and naming Plaintiff Stewart as the representative of
                the Class and California Subclass, and Plaintiff Keller as
6               representative of the Class and the New York Subclass, and further
                appointing Plaintiffs' attorneys as Class Counsel to represent the
7               Class, California Subclass, and New York Subclass Members;

8          b.   For an order declaring the Defendants' conduct violates the statutes
                referenced herein;
9

10         c.   For an order finding in favor of Plaintiffs, the Class, and the
                Subclasses on all counts asserted herein;

11         d.   For compensatory and punitive damages in amounts to be
                determined by the Court and/or jury;
12

13         e.   For prejudgment interest on all amounts awarded;

14         f.   For an order of restitution and all other forms of equitable monetary
                relief;

15         g.   For an order awarding Plaintiffs and the Class and Subclasses their
                reasonable attorneys' fees and expenses and costs of suit;

16         h.   Damages, restitution, and/or disgorgement in an amount to be
                determined at trial; and
17

18         i.   For such other and further relief as the Court may deem proper.

## **DEMAND FOR TRIAL BY JURY**

19

20          Plaintiffs demand a trial by jury of all issues so triable.

21

22

23

24

25

26

27

28

---

1

2    Dated:  January 10, 2020                    Respectfully submitted,

3                                                **BURSOR & FISHER, P.A.**

4                                                By:  ____/s/ *Neal J. Deckant*_____
                                                       Neal J. Deckant
5
                                                 L. Timothy Fisher (State Bar No. 191626)
6                                                Neal J. Deckant (State Bar No. 322946)
                                                 Brittany S. Scott (State Bar No. 327132)
7                                                1990 North California Boulevard, Suite 940
                                                 Walnut Creek, CA  94596
8                                                Telephone: (925) 300-4455
                                                 Facsimile:  (925) 407-2700
9                                                E-Mail: ltfisher@bursor.com
                                                         ndeckant@bursor.com
10                                                       bscott@bursor.com

11                                               **BURSOR & FISHER, P.A.**
                                                 Scott A. Bursor (State Bar No. 276006)
12                                               2665 S. Bayshore Dr., Suite 220
                                                 Miami, FL 31333
13                                               Telephone: (305) 330-5512
                                                 Facsimile:  (305) 676-9006
14                                               E-Mail: scott@bursor.com

15
                                                 *Attorneys for Plaintiffs*
16

17

18

19

20

21

22

23

24

25

26

27

28

---

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, Neal J. Deckant, declare as follows:

1.      I am counsel for Plaintiffs, and I am a partner at Bursor & Fisher, P.A.  I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2.      The complaint filed in this action is filed in the proper place for trial because Defendants have continuous and systematic contacts with the State of California as to essentially render them "at home" in this State, and Defendants' principal places of business are located in this State.  Moreover, Defendants have purposefully availed themselves of the laws and benefits of doing business in this State, and Plaintiff's claims arise out of the Defendants' forum-related activities.  Furthermore, a substantial portion of the events giving rise to Plaintiffs' claims occurred in this State, including Plaintiff Stewart's purchase of two CamelBak eddy Water Bottles.  Plaintiff Stewart also resides in this District.

3.      Plaintiff Stewart alleges that on September 13, 2017, she purchased two 12 oz CamelBak eddy Water Bottlesfor $13.00 and $12.99 from Amazon.com.  *See* Compl. ¶ 5.  Prior to her purchase, Plaintiff reviewed the labeling, packaging, and marketing materials for the CamelBak eddys and saw the representation that they were purportedly "spill-proof."  *See id.*  Plaintiff Stewart understood these claims to be representations and warranties by Defendants that the CamelBak eddy is purportedly "spill-proof" and free of defects that would cause water to run, flow, or fall out of the bottle (*i.e.*, leak).  *See id.*  Plaintiff Stewart reasonably relied on Defendants' representation that the CamelBak eddy is "spill-proof" when she purchased the CamelBak eddys.  *See id.*  However, Plaintiff Stewart's water bottles are defective because they leak and have actually leaked during prior use.  *See id.*

4.      Plaintiff Stewart alleges that Defendants' misrepresentations played a substantial part, and so had been a substantial factor, in her decision to purchase the CamelBak eddys, in that "she would not have purchased the CamelBak eddys if she had known that they were not, in fact, 'spill-proof.'"  *See id.*

1        I declare under the penalty of perjury under the laws of the United States and the State of

2   California that the foregoing is true and correct, executed on January 10, 2020 at Walnut Creek,

3   California.

 

 

 

                                            */s/ Neal J. Deckant*

                                            Neal J. Deckant

**EXHIBIT A**

# BURSOR & FISHER
P.A.

1990 N. CALIFORNIA BLVD.
SUITE 940
WALNUT CREEK, CA 94596
www.bursor.com

NEAL J. DECKANT
Tel: 925-300-4455
Fax: 925-407-2700
ndeckant@bursor.com

January 10, 2020

*__Via Certified Mail – Return Receipt Requested__*

CamelBak Products, LLC
2000 S. McDowell Blvd.
Suite 200
Petaluma, CA 94954

CamelBak International, LLC
2000 S. McDowell Blvd.
Suite 200
Petaluma, CA 94954

Re:     *Notice and Demand Letter Pursuant to U.C.C. §§ 2-313, 2-314, 2-607;*
        *the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.; and*
        *California's Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, et seq.*

To Whom It May Concern:

        This letter serves as a preliminary notice and demand for corrective action by CamelBak Products, LLC and CamelBak International, LLC (collectively, "CamelBak") pursuant to U.C.C. § 2-607(3)(a) concerning breaches of express and implied warranties related to our clients, John Keller and Jessica Stewart, and a class of all similarly situated purchasers of CamelBak eddy Water Bottles, including the CamelBak eddy Water Bottle 32 oz, CamelBak eddy Water Bottle 25 oz, CamelBak eddy Water Bottle 20 oz, Camelbak eddy Kids Water Bottle 12 oz, CamelBak Kids Vacuum Insulated Stainless Water Bottle 12 oz, CamelBak eddy Kids Insulated Water Bottle 12 oz, CamelBak eddy Insulated Water Bottle 20 oz, CamelBak eddy Vacuum Insulated Stainless Water Bottle 20 oz, and CamelBak eddy Glass Water Bottle 24 oz (the "Class"). This letter also serves as a notice of violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, California's Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.*, including subsections § 1770(a)(5), (7), and (9), and all other applicable federal and state laws.

        Our clients purchased CamelBak eddy Water Bottles, which CamelBak repeatedly misrepresented and warranted was "spill-proof." Ours client understood this to mean that water would not run, flow, or fall out of their CamelBak eddy water bottles (*i.e.*, leak). However, due to a defect, CamelBak eddy Water Bottles leak, and have actually leaked for our clients during prior use. Accordingly, CamelBak violated the California CLRA and breached express and implied warranties made to our client and the Class. *See* U.C.C. §§ 2-313, 2-314; California Civil Code §§ 1750, *et seq.*

BURSOR&FISHER
P.A.

On behalf of our clients and the Class, we hereby demand that CamelBak immediately (1) issue a mandatory recall of CamelBak eddy Water Bottles and (2) make full restitution to all purchasers of the CamelBak eddy of all purchase money obtained from sales thereof.

We also demand that CamelBak preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1.      All documents concerning the design, packaging, labeling, manufacturing, and redesign process for the CamelBak eddy Water Bottles;

2.      All tests of the CamelBak eddy Water Bottles, whether performed by CamelBak or any other third-party entities;

3.      All documents concerning the pricing, advertising, marketing, and/or sale of the CamelBak eddy Water Bottles;

4.      All communications with customers involving complaints or comments concerning the CamelBak eddy Water Bottles;

5.      All documents concerning communications with any retailer involved in the marketing or sale of the CamelBak Water Bottles; and

6.      All documents concerning the total revenue derived from sales of the CamelBak eddy Water Bottles.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

Please contact me right away if you wish to discuss an appropriate way to remedy this matter.  If I do not hear from you promptly, I will take that as an indication that you are not interested in doing so.

Very truly yours,

Neal J. Deckant