TODD O. MAIDEN (SBN CA 123524)
TMAIDEN@ReedSmith.com
Reed Smith LLP
101 Second Street, Suite 1800
San Francisco, CA 94105
Phone: +1 415 543 8700
Fax:     +1 415 391 8269

Attorneys for Defendants
CAMELBAK PRODUCTS, LLC and
CAMELBAK INTERNATIONAL, LLC

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| JESSICA STEWART and JOHN D. KELLER, individually and on behalf of all others similarly situated,<br><br>       Plaintiff<br><br>   v.<br><br>CAMELBAK PRODUCTS, LLC and CAMELBAK INTERNATIONAL, LLC,<br><br>       Defendants. | Case No. 20-cv-00232-YGR<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: April 14, 2020<br>Time: 2:00 p.m.<br>Place: Oakland Courthouse<br>     Court Room 1 – 4th Floor<br><br>Judge Yvonne Gonzalez Rogers<br><br>[*Declaration of Todd O. Maiden and Proposed Order Filed Concurrently Herewith*] |

TO THE COURT, ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on April 14, 2020 at 2:00 p.m. PST, or as soon thereafter as this matter may be heard, in Courtroom 1 of the above-entitled Court, located at 1301 Clay Street, Oakland, CA 94612, Defendants CamelBak Products, LLC, and CamelBak International, LLC, by and through counsel, will and hereby do move, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Plaintiffs' First Amended Class Action Complaint and each claim for relief therein, for lack of standing and for failure to state a claim upon which relief can be granted.  This Motion is based on the grounds discussed in the Memorandum of Points and Authorities in Support of this Motion, the Declaration of Todd O. Maiden, the complete file in this action, the arguments of counsel, and other further matters as this Court may consider.

WHEREFORE, Defendants CamelBak Products, LLC and CamelBak International, LLC respectfully requests that the Court issue an order GRANTING this Motion to Dismiss with prejudice and awarding Defendants CamelBak Products, LLC and CamelBak International, LLC such other and further relief as the Court deems just and appropriate.

Dated: February 5, 2020

Respectfully submitted,

REED SMITH LLP

By: */s/ Todd O. Maiden*

TODD O. MAIDEN (SBN CA 123524)
TMAIDEN@ReedSmith.com
Reed Smith LLP
101 Second Street, Suite 1800
San Francisco, CA 94105
Phone: +1 415 543 8700
Fax:    +1 415 391 8269

*Attorney for Defendants*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

# **TABLE OF CONTENTS**

2  I.     INTRODUCTION ................................................................................................ 1

3  II.    FACTUAL & LEGAL BACKGROUND ............................................................ 2

      A.   Plaintiffs' Allegations. ..............................................................................2

4     B.   Despite Plaintiffs' Failure To Make A Proper Warranty Claim, Defendants
           Fully Performed Any And All Warranty Obligations .................................3

5  III.   LEGAL ARGUMENT ......................................................................................... 5

6     A.   Plaintiffs Lack Standing To Pursue Class And Individual Claims. ................5

7        1.   Standard Of Review Under Rule 12(b)(1). ........................................5

         2.   Constitutional Standing Requirements. .............................................6

8        3.   Plaintiffs Lack Standing Because Complete Relief Is And Has Been
              Available To Them. ........................................................................6

9        4.   Plaintiffs Lack Standing To Pursue Class Claims Arising Outside
              California And New York. ...............................................................9

10       5.   Plaintiffs Lack Standing To Assert Claims Related To Products They
11            Did Not Purchase And Advertisements They Did Not See. ...........11

12    B.   The FAC Fails To State A Viable Claim. .................................................13

         1.   Plaintiffs Fail To Identify The Law They Seek To Invoke. .............13

13       2.   The Warranty Claims Fail Under California And New York Law .......13

14       3.   Plaintiffs' Unjust Enrichment Claim (Count IV) Is Not Cognizable. .....16

15       4.   Plaintiff Stewart's California Equitable Claims (Counts IV-VI) Should
              Be Dismissed. ..............................................................................16

16       5.   The Alleged Fraud Claims Are Not Pled With Sufficient Particularity. .........19

17       6.   The Economic Loss Rule Bars Plaintiffs' Negligent Misrepresentation
              Claim. ........................................................................................22

18       7.   The New York General Business Law Claims Fail To Sufficiently
              Allege a Recoverable Injury. .........................................................24

19 IV.    CONCLUSION .................................................................................................. 25

20

21

22

23

24

25

26

27

28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3
**Cases**

4
*Acedo v. DMAX, Ltd.*,
5
    No. CV 15-02443 MMM, 2015 WL 12696176 (C.D. Cal. Nov. 13, 2015) .................................15

6
*Allen v. Wright*,
    468 U.S. 737 (1984).................................................................................................................6
7

8
*Baba v. Hewlett-Packard Co.*,
    No. C 09–05946 RS, 2011 WL 317650 (N.D. Cal. Jan. 28, 2011) .............................................21

9
*Becker v. Skype Inc.*,
10
    Case No. 5:12-cv-06477-EJD, 2014 WL 556697 (N.D. Cal. Feb. 10, 2014)..............................9

11
*Brandon v. National R.R. Passenger Corp. Amtrak*,
    No. CV 12-5796 PSG, 2013 WL 800265 (C.D. Cal. Mar. 1, 2013)............................................9
12

13
*In re Carrier IQ, Inc., Con. Priv. Litig.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) .............................................................................10, 16

14
*Cattie v. Wal-Mart Stores, Inc.*,
15
    504 F. Supp. 2d 939 (S.D. Cal. 2007) .............................................................................17

16
*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) .............................................................................15

17
*Colella v. Atkins Nutritionals, Inc.*,
18
    348 F. Supp. 3d 120 (E.D.N.Y. 2018).................................................................................24

19
*Corcoran v. CVS Health Corp.*,
20
    15-CV-3504-YGR, 2016 WL 4080124 (N.D. Cal. July 29, 2016)...............................................9

21
*Deitz v. Comcast Corp.*,
    2006 WL 3782902 (N.D. Cal. Dec. 21, 2006)...........................................................................17
22

23
*Destfino v. Reiswig*,
    630 F.3d 952 (9th Cir. 2011) .............................................................................20

24
*Epstein v. JPMorgan Chase & Co.*,
    No. 13 Civ. 4744(KPF), 2014 WL 1133567 (S.D.N.Y. Mar. 21, 2014) .........................................9
25

26
*Estrada v. Caliber Home Loans, Inc.*,
    172 F. Supp. 3d 1108 (C.D. Cal. 2016) .............................................................................20

27
*In re Ford Tailgate Litig.*,
28
    No. 11-CV-2953-RS, 2014 WL 1007066 (N.D. Cal. Mar. 12, 2014) .........................................18

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Freas v. BMW of North America, LLC,*
   320 F. Supp. 3d 1126 (S.D. Cal. 2018).......................................................................14

*Garcia v. General Motors LLC,*
   Case No. 1:18-cv-01313-LJO-BAM, 2018 WL 6460196 (E.D. Cal. Dec. 10,
   2018) ..........................................................................................................................22

*Gold v. Lumber Liquidators, Inc.,*
   No. 14-cv-05373-THE, 2015 WL 7888906 (N.D. Cal. Nov. 30, 2015).......................19

*Gonzales v. Comcast Corp.,*
   No. 10-cv-01010-LJO-BAM, 2012 WL 10621 (E.D. Cal. Jan. 3, 2012) ..................5, 9

*Gordon v. Hain Celestial Group, Inc.,*
   Case No. 16-cv-6526, 2017 WL 213815 (S.D.N.Y. Jan. 18, 2017) ....................16, 23

*Haag v. Hyundai Motor Am.,*
   969 F. Supp. 2d 313 (W.D.N.Y. 2013) .......................................................................16

*Hindsman v. General Motors LLC,*
   Case No. 17-cv-05337-JSC, 2018 WL 2463113 (N.D. Cal. June 1, 2018) .............9, 10

*Hydro Inv'rs. Inc. v. Trafalgar Power Inc.,*
   227 F.3d 8 (2d Cir. 2000) ..........................................................................................23

*Ivie v. Kraft Foods Global, Inc.,*
   No. C–12–02554–RMW, 2013 WL 685372 (N.D. Cal. Feb. 25, 2013).......................11

*Izquierdo v. Mondelez International, Inc.,*
   Case No. 16-cv-04697 (CM), 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016).........24, 25

*Janda v. T-Mobile, USA, Inc.,*
   No. C 05-03729 JSW, 2009 WL 667206 (N.D. Cal. Mar. 13, 2009) ..........................17

*Johns v. Bayer Corp.,*
   No. 09-cv-1935, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010).......................................11

*Kearns v. Ford Motor Co.,*
   567 F.3d 1120 (9th Cir. 2009) ...........................................................................19, 20, 21

*Keegan v. Am. Honda Motor Co.,*
   838 F. Supp. 2d 929 (C.D. Cal. 2012) .......................................................................19

*Keele v. Wexler,*
   149 F.3d 589 (7th Cir. 1998) ......................................................................................6

*Kellman v. Whole Foods Market, Inc.,*
   313 F. Supp. 3d 1031 (N.D. Cal. 2018) .......................................................................13

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

*King v. Nat'l Gen. Ins. Co.*,
    129 F. Supp. 3d 925 (N.D. Cal. 2015) ........................................................................20

*Kwikset Corp. v. Super. Ct.*,
    51 Cal.4th 310, 2011 WL 240278 (Cal. Jan. 27, 2011) ...............................................12

*Ladore v. Sony Computer Entmt. Am., LLC*,
    75 F. Supp. 3d 1065 (N.D. Cal. 2014) ........................................................................23

*Larsen v. Trader Joe's Co.*,
    No. C 11-05188 SI, 2012 WL 5458396 (N.D. Cal. June 14, 2012)...............................11

*Laster v. T-Mobile USA, Inc.*,
    407 F. Supp. 2d 1181 ..................................................................................................17

*Lepkowski v. CamelBak Products LLC*,
    Case No. 19-cv-04598-YGR, 2019 WL 6771785 (N.D. Cal. Dec. 12, 2019) .................7

*Lewis v. Casey*,
    518 U.S. 343 (1996) .......................................................................................................6

*Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*,
    Case No. 13-cv-01180-BLF, 2014 WL 4774611 (N.D. Cal. Sept. 22, 2014) ........10, 13

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)........................................................................................................6

*Luman v. Theismann*,
    No. 2:13-cv-00656-KJM-AC, 2014 WL 443960 (E.D. Cal. Feb. 4, 2014) (aff'd
    647 Fed. App'x 804 (9th Cir. 2016)) .............................................................................9

*In re Magnesium Oxide Antitrust Litig.*,
    Civ. No. 10-5942 (DRD), 2011 WL 5008090 (D.N.J. Oct. 20, 2011) ...........................6

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ........................................................................................10

*McCarthy v. United States*,
    850 F.2d 558 (9th Cir. 1988) ..........................................................................................5

*Mlejnecky v. Olympus Imaging America Inc.*,
    No. 2:10-CV-02630 JAM-KHN, 2011 WL 1497096 (E.D. Cal. Apr. 19, 2011) ....11, 12

*Morales v. TransWorld Airlines, Inc.*,
    504 U.S. 374 (1992)......................................................................................................18

*Mullins v. Premier Nutrition Corp.*,
    No. 13-cv-01271-RS, 2018 WL 510139 (N.D. Cal. Jan. 23, 2018) ............................18

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– iv –

*Nalthel v. Siegal*,
   592 F. Supp. 2d 452 (S.D.N.Y. 2008)............................................................21

*Neilson v. Union Bank of Cal., N.A.*,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) .........................................................20

*O'Shea v. Littleton*,
   414 U.S. 488 (1974)...........................................................................................6

*Oddo v. Arcoaire Air Conditioning & Heating*,
   8:15-cv-01985-CAS(Ex), 2017 WL 372975 (C.D. Cal. Jan. 24, 2017) .......................14

*Outboard Marine Corp. v. Super. Ct.*,
   52 Cal. App. 3d 30 (1975) ...............................................................................17

*Pfizer Inc. v. Superior Ct.*,
   182 Cal. App. 4th 622 (2010) ..........................................................................18

*Philips v. Ford Motor Co.*,
   No. 14–CV–02989–LHK, 2015 WL 4111448 (N.D. Cal. July 7, 2015) .......................18

*Prudential Home Mortg. Co. v. Superior Ct.*,
   66 Cal. App. 4th 1236 (1998) ..........................................................................18

*Robinson v. HSBC Bank USA*,
   732 F. Supp. 2d 976 (N.D. Cal. 2010) ............................................................16

*Route v. Mead Johnson Nutrition Co.*,
   No. CV 12-7350-GW(JEMx), 2013 WL 658251 (C.D. Cal. Feb. 21, 2013)..........10, 11

*Rugg v. Johnson & Johnson*,
   No. 17-cv-05010-BLF, 2019 WL 119971 (N.D. Cal. Jan. 7, 2019) .......................11, 12

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ...........................................................................5

*Savage v. Glendale Union High Sch.*,
   343 F.3d 1036 (9th Cir. 2003) ...........................................................................5

*Sciacca v. Apple, Inc.*,
   362 F. Supp. 3d 787 (N.D. Cal. 2019) ............................................................22

*Segedie v. Hain Celestial Grp., Inc.*,
   No. 14-cv-5029 (NSR), 2015 WL 2168374 (S.D.N.Y. May 7, 2015)........................24

*Small v. Lorillard Tobacco Co.*,
   720 N.E.2d 892 (N.Y. 1999)............................................................................24

*Spencer v. Kemna*,
   523 U.S. 1 (1998)...............................................................................................5

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

— v —

*In re Static Random Access Memory (SRAM) Antitrust Litig.,*
   580 F. Supp. 2d 896 (N.D. Cal. 2008) .......................................................................13

*Strama v. Toyota Motor Sales, U.S.A., Inc.*
   No. 15 C 9927, 2016 WL 561936 (N.D. Ill. Feb. 12, 2016)...................................6, 8

*Sue Shin v. Campbell Soup Co.,*
   Case No. CV 17-1082-DMG (JCx), 2017 WL 3534991 (C.D. Cal. Aug. 9, 2017) ....................19

*Tasion Ommunications, Inc. v. Ubiquiti Networks, Inc.,*
   No. C-13-1803 EMC, 2013 WL 4530470 (N.D. Cal. Aug. 26, 2013).........................................23

*Tomasino v. Estee Lauder Co., Inc.,*
   4 F. Supp. 3d 251 (E.D.N.Y. 2014) .........................................................................14

*U.S. Express Leasing, Inc. v. Elite Tech. (N.Y.), Inc.,*
   928 N.Y.S.2d 696, 700 (1st Dept. 2011) .................................................................23

*United Guar. Mortg. Indemn. Co. v. Countrywide Fin. Corp,*
   660 F. Supp. 2d 1163 (C.D. Cal. 2009) ..................................................................23

*Vinci v. Hyundai Motor Am.,*
   2018 WL 6136828 (C.D. Cal. Apr. 10, 2018) ................................................10, 13, 14

*Von Grabe v. Sprint PCS,*
   312 F. Supp. 2d 1285 (S.D. Cal.)...........................................................................17

*Warth v. Seldin,*
   422 U.S. 490 (1975).................................................................................................5

*Weisblum v. Prophase Labs, Inc.,*
   88 F. Supp. 3d 283 (S.D.N.Y. 2015).......................................................................23

*Whelan v. BDR Thermea,*
   No. C-11-02146, 2011 WL 6182329 (N.D. Cal. Dec. 13, 2011).............................17

*White v. Lee,*
   227 F.3d 1214 (9th Cir. 2000) ...............................................................................5

*Wilson v. Hewlett-Packard Co.,*
   668 F.3d 1136 (9th Cir. 2012) ..............................................................................21

*Yumul v. Smart Balance, Inc.,*
   733 F. Supp. 2d 1117 (C.D. Cal. 2010) .............................................................20, 21

*Zinser v. Accufix Research Inst.,*
   253 F.3d 1180 (9th Cir. 2001) ..............................................................................14

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

**Statutes**

15 U.S.C. § 2301 ..................................................................................................................4

Cal. Civ. Code § 1782(a) ...................................................................................................17

**Rules**

Rule 9(b) .....................................................................................................................19, 20

Rule 12(b)(1)......................................................................................................................2

**Other Authorities**

https://www.camelbak.com/en/customer-service/warranty ..................................................4

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

<div style="text-align:left; writing-mode: vertical-rl;">REED SMITH LLP<br>A limited liability partnership formed in the State of Delaware</div>

### MEMORANDUM OF POINTS AND AUTHORITIES

Defendants CamelBak Products, LLC ("CamelBak Products") and CamelBak International, LLC. ("CI") jointly submit this Motion to Dismiss Plaintiffs' First Amended Class Action Complaint (the "FAC") [Dkt. 16].

## I.    INTRODUCTION

This case is substantively identical in all relevant respects to *Lepkowski v. CamelBak Products, LLC, et. al.,* which this Court recently dismissed. Case No. 19-cv-04598-YGR. Plaintiffs Jessica Stewart's ("Stewart") and John D. Keller's ("Keller") FAC arises out of their purchase of three inexpensive CamelBak eddy water bottles of two different types, which they allegedly ordered for $12.82, $13.00, and $12.99 on Amazon.com. The FAC asserts *eleven* separate claims, ranging from breach of warranty to fraud to unjust enrichment, all of which are premised on the same basic allegation: Plaintiffs purchased water bottles in 2017 and early 2018 that were advertised as "spill proof," but leaked. Based on this, and not much else, Plaintiffs seek to represent a nationwide class and two subclasses of purchasers of various CamelBak-branded products, regardless of which particular product they purchased, which particular advertising materials they saw and relied on, and the design, age, history of use, and performance of the various other water bottles. These claims, like those in *Lepkowski*, are subject to dismissal for myriad reasons.

*First*, Plaintiffs lack standing to pursue *any* of their claims against Defendants because they have not suffered the type of concrete and particularized injury required to establish a case or controversy under Article III of the U.S. Constitution. In addition, because the sale transactions and alleged resulting harm occurred solely in California, for Stewart, and New York, for Keller, Plaintiffs lack standing to bring claims on behalf of putative class members whose claims arise *outside* those two states. Plaintiffs also lack standing to assert (and can therefore not represent a class of those asserting) claims based on products they did not purchase and advertisements and product literature they neither saw nor relied upon.

*Second,* dismissal is also proper under Rule 12(b)(6) because the FAC fails to state any valid claim upon which relief can be granted. Plaintiffs' non-statutory claims fail because they make no attempt to specify which laws they are attempting to invoke. Even if Stewart and Keller were

– 1 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   attempting to invoke California and New York law, respectively, the FAC still does not survive.

2   Plaintiffs' warranty claims (Counts I through III) fail because Plaintiffs did not provide Defendants

3   with notice of the alleged defect, and have not pled an uncured breach.  Finally, Plaintiffs' implied

4   warranty claim also fails for lack of privity.

5       Plaintiffs' fraud-based claims (Counts V through XI, including the statutory claims premised

6   on alleged fraudulent conduct) suffer similar flaws and fail to meet Rule 9(b)'s heightened pleading

7   standards.  Specifically, they fail to establish Defendants' awareness of any alleged defect with

8   Plaintiffs' water bottles prior to purchase.  Plaintiff Stewart is precluded from asserting her

9   California statutory claims because an adequate remedy at law already exists.  Keller's New York

10   statutory consumer fraud claims do not sufficiently plead injury.  Plaintiffs' unjust enrichment claim

11   is not cognizable as a standalone cause of action here and, at a minimum, is barred by their pursuit of

12   other claims.  And the negligent misrepresentation claim is precluded by the economic loss rule and

13   other similar issues.  Accordingly, the FAC is subject to wholesale dismissal.

## II.  FACTUAL & LEGAL BACKGROUND

### A.  Plaintiffs' Allegations.[1]

16   The FAC contains claims asserted against two independent defendants—CamelBak Products

17   and CI.  In the "Parties" section, Plaintiffs acknowledge that the two companies are distinct entities

18   incorporated in different states.  (FAC, ¶¶ 5-6.)  Thereafter, the FAC improperly refers to the

19   separate entities jointly as "Defendants" or "Camelbak" without regard to which entity allegedly

20   performed which alleged act relevant to this lawsuit.  (See, e.g., id. ¶¶ 12-30).  Plaintiffs' only

21   justification for this is the naked conclusion that Defendants jointly make marketing and sales

22   decisions, and that products are offered under the brand name "CamelBak."  (Id. ¶ 7.)

23   Stewart, a California citizen, alleges that she purchased two 12 oz CamelBak eddy Kids ater

24   bottles online for $13.00 and $12.99 at Amazon.com in September 2017.  (Id. ¶ 6.)  Keller, a citizen

25   of New York, alleges he purchased a 25 oz CamelBak eddy water bottle for $12.82 in January 2018,

[1]  Except for allegations that contradict the actual terms of the warranty alleged in the Complaint, and the factual challenge to subject matter jurisdiction under Rule 12(b)(1), which are properly considered in deciding this motion, Defendants accept as true, as they must for purposes of this motion only, all well-pled allegations.

— 2 —

also from Amazon.com.  (*Id.* ¶ 5.)  Plaintiffs both claim that prior to purchasing their water bottles, they reviewed "the labeling, packaging, and marketing materials"—although they do not specify which ones—and saw a representation that the water bottles eventually purchased were "spill-proof."  (*Id.* ¶¶ 5-6.)  Based on this "spill-proof" representation, Plaintiffs claim they reached the same understanding—that their bottles would be "free of defects that would cause water to run, flow, or fall out of the bottle (*i.e.*, leak)."  (*Id.*)  Plaintiffs allege that sometime during the two years in use, for Keller, and three years in use, for Stewart, they experienced leaks from the bottles.  (*Id.*)  Significantly, neither Plaintiff alleges that their water bottles have spilled water or that they experienced any spilling during normal use.  Nor do Plaintiffs identify any defect in the water bottles that caused a leak, or describe the conditions that precipitated any alleged leaks.  Plaintiffs do not allege that they ever made any warranty claim to Defendants or otherwise provided any pre-lawsuit notice or opportunity for Defendants to cure any alleged defects.  Despite these significant omissions, Plaintiffs claim that Defendants committed fraud, breached express and implied warranties, and violated a host of California and New York statutes.

Plaintiffs seek to pursue claims on behalf of themselves and a putative class of all persons anywhere in the United States who purchased a CamelBak eddy at any time, as well as subclasses of purchasers within New York and California.  (*Id.* ¶¶ 31-33.)  Plaintiffs admit that there are many different models of CamelBak eddy bottles other than the ones they purchased, with different designs and materials.[2] (*Id.* ¶ 1.)  Plaintiffs plead no experience with any water bottles but their own and completely ignore the differences by lumping all *nine* different types of water bottles together as "the CamelBak eddy."

## B.   Despite Plaintiffs' Failure To Make A Proper Warranty Claim, Defendants Fully Performed Any And All Warranty Obligations.

While the FAC makes selective references to what Plaintiffs mistakenly call "Defendants'" website, it never mentions the most crucial portion of CamelBak Products' website—the actual

---

[2]   These include "the CamelBak eddy Water Bottle 32 oz, CamelBak eddy Water Bottle 25 oz, CamelBak eddy Water Bottle 20 oz, Camelbak eddy Kids Water Bottle 12 oz, Camelbak Kids Vacuum Insulated Stainless Water Bottle 12 oz, CamelBak eddy Kids Insulated Water Bottle 12 oz, CamelBak eddy Insulated Water Bottle 20 oz, CamelBak eddy Vacuum Insulated Stainless Water Bottle 20 oz, and CamelBak eddy Glass Water Bottle 24 oz."

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

CamelBak Warranty. A copy of this Lifetime Guarantee is available online at https://www.camelbak.com/en/customer-service/warranty, and a printout of the applicable warranty is included as **Exhibit A** to the Declaration of Todd O. Maiden ("Maiden Dec."), attached hereto as **Exhibit 1**. Pursuant to the warranty terms, CamelBak Products promises to "repair or replace at its discretion any manufacturing defect" in CamelBak-branded products, and covers all products that "legitimately fail due to a manufacture defect" excepting products that fail due to ordinary wear and tear. (*Id.*) In order to submit a warranty claim, the website directs consumers to a link, where they may "request replacement parts or issue a request for a full product replacement." (*Id.*) In order for the particular product to be evaluated for warranty eligibility, consumers must send their water bottle in along with the warranty submission. (*Id.*) The warranty program also directs consumers to request a refund or exchange through their retailer or distributor, if desired. (*Id.*)

Prior to filing this lawsuit, Plaintiffs, through their attorneys, knew of the existence and terms of their warranty and the fact that a free repair or replacement of their products was readily available through the warranty. *See* Lepkowski Mot. to Dismiss, Case No. 19-cv-04598-YGR, at Dkt. 18-1. However, Plaintiffs chose not to comply with these warranty procedures or the applicable law. Instead of following the simple warranty process and law requiring prior notice, Plaintiffs' lawyers attempted to circumvent the law by sending a letter by certified mail on Friday, January 10, 2020 to be received by Defendants **after** Plaintiffs filed their original complaint the same day.

Plaintiffs' post-filing letter states it was purportedly issued as "preliminary notice" pursuant to Article 2 of the Uniform Commercial Code, 15 U.S.C. §§ 2301 *et seq.* of the Magnuson-Moss Warranty Act, and §§ 1750 *et seq.* of the California's Consumer Legal Remedies Act. (*See* FAC at Exhibit A.) On January 13, 2020, the next business day after Plaintiffs sent their letter, Defendants responded noting that Plaintiffs did not provide proper notice or make a proper warranty claim, but nonetheless providing a full refund and reminding them that replacement bottles are also readily available at no charge, with an invitation to choose their specific replacement water bottles. (*See* Maiden Dec. at Exh. B). Plaintiffs' counsel admitted receipt of the full refunds and availability of the replacement bottles, but sought to return the full refund and decline the free replacement bottles by mischaracterizing the readily available remedy as a "settlement offer," even though the letter

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

plainly states that the payments and replacement bottle are Plaintiffs' to keep unconditionally, and with no return consideration required.  (*Id.* at Exhs. B-C).  Defendants returned the full refund and provided replacement bottles to Plaintiffs with a reminder that they are Plaintiffs' to keep unconditionally, without consideration, and that Plaintiffs may do with them whatever they wish. (*Id.* at Exh. D.)  Despite Plaintiffs' continued attempts to return the refunds and bottles, the fact that they are fully available remains true to this day.

### III.   LEGAL ARGUMENT

#### A.   Plaintiffs Lack Standing To Pursue Class And Individual Claims.

##### 1.   Standard Of Review Under Rule 12(b)(1).

Rule 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction.  The standing doctrine, a component of subject matter jurisdiction, stems from Article III of the US Constitution, which limits the jurisdiction of the federal courts to live cases or controversies. *Spencer v. Kemna,* 523 U.S. 1, 7 (1998).  Article III standing therefore involves a threshold inquiry into whether the court has the power to hear the suit before it.  *Warth v. Seldin,* 422 U.S. 490, 498 (1975).  If plaintiff lacks standing, the court lacks subject matter jurisdiction, requiring dismissal.

Rule 12(b)(1) motions to dismiss can challenge standing facially or factually.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  Although facial attacks require the court to assume all allegations to be true, and construe them in the light most favorable to the plaintiff, factual challenges are treated differently.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Here, where extrinsic evidence is provided in support of Defendants' argument that the plaintiff lacks standing, this Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony" to resolve the jurisdictional dispute.  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  In fact, it is *always* the plaintiff's burden to establish standing.  *Gonzales v. Comcast Corp.*, No. 10-cv-01010-LJO-BAM, 2012 WL 10621, at *5 (E.D. Cal. Jan. 3, 2012).  A plaintiff's burden is heightened in a factual challenge because "[o]nce the moving party…present[s] affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

### 2.     Constitutional Standing Requirements.

Article III of the United States Constitution limits this Court's subject matter jurisdiction to actual cases and controversies.  To have constitutional standing, a plaintiff must demonstrate: (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  Where relief is available without filing a lawsuit, a plaintiff cannot meet his burden of establishing standing to pursue a claim on behalf of himself, or a class.  *Strama v. Toyota Motor Sales, U.S.A., Inc.*  No. 15 C 9927, 2016 WL 561936, at *1 (N.D. Ill. Feb. 12, 2016).

In multi-count actions, standing is analyzed and must be established on a claim-by-claim basis.  *Allen v. Wright*, 468 U.S. 737, 752 (1984).  The fact that Plaintiffs seek to pursue a class action does not change the standing requirement or analysis.  Specifically, the named plaintiffs must possess the same interest and suffer the same injury as the class as a whole.  *Keele v. Wexler*, 149 F.3d 589, 592-93 (7th Cir. 1998).  As one district court keenly observed, were it otherwise, plaintiffs "would be able to bring a class action complaint under the laws of nearly every state in the Union without having to allege concrete, particularized injuries relating to those states, thereby dragging defendants into expensive nationwide class discovery without a good-faith basis."  *In re Magnesium Oxide Antitrust Litig.*, Civ. No. 10-5942 (DRD), 2011 WL 5008090, at *10 (D.N.J. Oct. 20, 2011).

Standing is a threshold issue for any case, so the fact that a case is brought as a class action has no impact on the foundational standing requirements.  *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("That a suit may be a class action … adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured.")  Without standing to pursue individual claims, named plaintiffs similarly cannot pursue claims on behalf of a class.  *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("if none of the named plaintiffs … establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.")  The initial inquiry is therefore whether the named plaintiffs have standing, not whether other putative class members have standing.

### 3.     Plaintiffs Lack Standing Because Complete Relief Is And Has Been Available To Them.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Plaintiffs lack standing because relief is readily available to them without a lawsuit. Plaintiffs claim they overpaid for their water bottles because they leak, which they would not have purchased absent the fact they were supposed to be spill-proof.  Plaintiffs completely ignore the fact that relief is readily available to them outside of litigation through a lifetime warranty that provides a free repair or replacement, and that both a full and unconditional refund replacement water bottles of their choosing were made promptly made available to them at no cost.

Plaintiffs are fully aware that relief was readily available to them without a lawsuit. Plaintiffs' attorneys recently brought a nearly identical putative class action lawsuit that this Court dismissed with prejudice on standing grounds.  *Lepkowski v. CamelBak Products LLC,* Case No. 19-cv-04598-YGR, 2019 WL 6771785, at *4 (N.D. Cal. Dec. 12, 2019).  There, as here, the plaintiff lacked constitutional standing because she already had relief available for her allegedly leaking water bottle—through the CamelBak Lifetime Warranty and through the full refund along with a replacement product Defendants provided when Ms. Lepkowski provided them with mandatory notice.  *Id.* at *2-3.  After this Court dismissed that case with prejudice, Plaintiffs' attorneys filed this substantively identical case, which blatantly attempts to circumvent this Court's ruling and the law, by asserting the same claims without availing themselves of the readily available full relief.

Plaintiffs' attempt to avoid this Court's ruling in *Lepkowski* through gamesmanship cannot succeed.  Recognizing that Plaintiffs' claims require pre-suit notice in order to allow Defendants to provide a remedy, and knowing that the CamelBak Lifetime Warranty will be honored and Plaintiffs would receive a refund and new bottles, Plaintiffs filed their lawsuit before Defendant could possibly receive their notice through certified mail.  In other words, in a sharp departure from the proper notice procedure Plaintiffs' attorneys followed for Ms. Lepkowski, Plaintiffs' attorneys purposely timed their certified notice letter to be delivered to Defendants after their lawsuit was filed.  The mandatory pre-lawsuit notice requirement for Stewart and Keller were flagrantly ignored, resulting in a perfunctory, non-compliant, and essentially useless letter that cannot accomplish what its own language purports to seek—a remedy prior to litigation.  (FAC at Exh. A.)  Plaintiffs' chicanery, however, does not cure their lack of constitutional standing.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1     As explained in the CamelBak Lifetime Warranty and Defendants' communications with

2     Stewart and Keller's attorneys, customer satisfaction is very important to Defendants.  (Maiden Dec.

3     at Exhs. B-C.)   For this reason, the warranty allows consumers to receive replacement parts or an

4     entire replacement product if necessary, if they are unsatisfied with the performance of their water

5     bottles.  (*Id.* at Exh. A.)  Indeed, Plaintiffs immediately received an unconditional full refund and

6     replacement water bottles when they first contacted Defendants.  (*Id.* at Exhs. B-D.)   Plaintiffs

7     simply ignore this extra-judicial remedy with the hope they can pursue a flawed lawsuit.   This type

8     of manufactured dispute is outside the scope of Article III, which limits justiciable cases to *actual*

9     cases and controversies.   The Northern District of Illinois confronted a similar issue several years

10    ago in *Strama v. Toyota Motor Sales, U.S.A., Inc.*   There, like here, the class representatives tried to

11    manufacture a putative class action asserting consumer fraud and related claims against Toyota

12    arising out of alleged issues with their SUV's oil consumption.   No. 15 C 9927, 2016 WL 561936, at

13    *1 (N.D. Ill. Feb. 12, 2016).   But Toyota already had a warranty enhancement program, which

14    permitted customers to obtain full repair and reimbursement.  *Id.* at *2.   Plaintiffs ignored the readily

15    available remedy that Toyota offered and chose to sue.  *Id.*   Plaintiffs' case was dismissed for lack of

16    standing because the relief they sought by way of the lawsuit was already fully available under the

17    warranty program.  *Id.*   Plaintiffs' decision to "ignore the [relief] offered to them and to instead

18    initiate litigation and attempt to initiate a class action to obtain the precise relief offered to them"

19    deprived the court of jurisdiction, and warranted dismissal of their individual and class claims.  *Id.*

20    Plaintiffs here find themselves in an even more tenuous position than the plaintiffs in *Strama*.

21    Here, not only did Defendants' warranty procedures make a full product replacement available

22    without the need to resort to litigation (which in and of itself indicates that they suffered no

23    cognizable injury), Defendants here immediately sent Plaintiffs an unconditional *full* refund and

24    replacement bottles once they received Plaintiffs' letter.  (Maiden Dec. at Exhs. B, D.)  Through the

25    *Lepkowski* litigation, Plaintiffs' attorneys were fully aware when they sent the letter that this relief

26    would be available upon receipt of the notice, and it was and still is.   But Plaintiffs ignore the

27    available extra-judicial remedy, as though pretending it is unavailable makes a difference.   It does

28    not.   Cases throughout the country have consistently held that plaintiffs who have full refunds

— 8 —

available to them lack standing to file suit.  *See Luman v. Theismann*, No. 2:13-cv-00656-KJM-AC, 2014 WL 443960, at *2-5 (E.D. Cal. Feb. 4, 2014) (aff'd 647 Fed. App'x 804 (9th Cir. 2016)) (full refund deprived plaintiff of standing); *Becker v. Skype Inc.*, Case No. 5:12-cv-06477-EJD, 2014 WL 556697, at *2 (N.D. Cal. Feb. 10, 2014) (dismissing claims where plaintiff received a full refund); *Brandon v. National R.R. Passenger Corp. Amtrak*, No. CV 12-5796 PSG (VBKx), 2013 WL 800265, at *3-5 (C.D. Cal. Mar. 1, 2013) (same); *Gonzales*, 2012 WL 10621, at *5-8 (in light of defendant's refunds, plaintiff (and class) lacked non-speculative evidence showing injury-in-fact); *Epstein v. JPMorgan Chase & Co.*, No. 13 Civ. 4744(KPF), 2014 WL 1133567, at *5 (S.D.N.Y. Mar. 21, 2014) (plaintiff lacked standing in light of full refund, even though plaintiff returned it).

     *Strama, Luman*, and these other similar cases highlight that Plaintiffs here have not suffered any injury.  Plaintiffs' attempt to circumvent Defendants' known warranty and refund procedures and manufacture standing, trampling over pre-suit notice requirements in the process, should not succeed.  Because Plaintiffs have been made whole, this lawsuit should be dismissed.

     **4.**     **Plaintiffs Lack Standing To Pursue Class Claims Arising Outside California And New York.**

     Plaintiffs' putative nationwide class proposes to include "all persons in the United States who purchased a CamelBak eddy."  (FAC ¶ 31.)  By its plain language, this includes *anyone* who purchased *any* CamelBak eddy model *anywhere* and at *any time*.  But Stewart and Keller lack the requisite standing to pursue claims originating outside of California and New York, respectively, because they reside in those states, purchased their water bottles in those states, and allegedly suffered resulting harm in the same states.  The factual allegations in the FAC are limited to New York and California-based activity, and there are no allegations from which it can be inferred that any part of Plaintiffs' claims arose or impacted them outside of their home states.  Federal courts in this district and in this Circuit routinely reject assertions of standing by class representatives for claims arising under the laws of states where the representative neither resides nor suffered injury. *See Hindsman v. General Motors LLC*, Case No. 17-cv-05337-JSC, 2018 WL 2463113, at *15-16 (N.D. Cal. June 1, 2018) (collecting cases and describing dismissal of nationwide classes for lack of standing as the "majority" approach in this district); *Corcoran v. CVS Health Corp.*, 15-CV-3504-

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

– 9 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  YGR, 2016 WL 4080124, at *2 (N.D. Cal. July 29, 2016); *In re Carrier IQ, Inc., Con. Priv. Litig.*,

2  78 F. Supp. 3d 1051, 1064-65 (N.D. Cal. 2015) (collecting cases); *Los Gatos Mercantile, Inc. v. E.I.*

3  *DuPont De Nemours & Co.*, Case No. 13-cv-01180-BLF, 2014 WL 4774611, at *2-4 (N.D. Cal.

4  Sept. 22, 2014); *Route v. Mead Johnson Nutrition Co.*, No. CV 12-7350-GW(JEMx), 2013 WL

5  658251, at *7-9 (C.D. Cal. Feb. 21, 2013).

6  The Ninth Circuit has expressly recognized that California's laws differ from those enacted

7  in other states, and that California law, as a matter of California's choice of law rules, cannot govern

8  class claims where "the interests of other states outweigh California's interest." *Mazza v. Am.*

9  *Honda Motor Co.*, 666 F.3d 581, 594-90 (9th Cir. 2012).  Indeed, in *Vinci v. Hyundai Motor Am.*, an

10  Oregon resident sought to represent a nationwide class of vehicle purchasers, which the court

11  soundly rejected after careful analysis.  Case No. SA CV 17-0997-DOC (KESx), 2018 WL 6136828,

12  at *6-10 (C.D. Cal. Apr. 10, 2018).  Citing *Mazza,* the court acknowledged the numerous differences

13  between consumer fraud, warranty, and other laws in California versus other states, and compared

14  California's and Oregon's respective connections with and interests in the dispute.  *Id.* at *6-9.

15  California's interest—even in regulating its own companies—did not outweigh the interest of the

16  "place of the wrong"—that is, the interest in the plaintiff's and class members' home state(s) in

17  regulating in-state transactions and protecting their own residents.  *Id.* at *10.  *See also Hindsman*,

18  2018 WL 2463113, at *16 (all claims on behalf of putative class members outside of California

19  dismissed for lack of standing); *Route,* 2013 WL 658251, at *7-9 (similar).

20  This case is factually indistinguishable from *Hindsman*.  In dismissing the claims brought on

21  behalf of non-California consumers, the court emphasized that the case was "California-centric" in

22  that each of the named plaintiffs resided in California, purchased the products at issue in California,

23  and brought numerous claims under California law only.  *Id.*  There was "no named plaintiff from

24  *any* of the other 49 states whose laws" were at issue in the claims the named plaintiffs sought to

25  bring.  *Id.*  The same is true here—nowhere do Plaintiffs suggest that California or New York have

26  *any* interest in the outcome of claims (whatever the legal theory on which they are premised) brought

27  by out-of-state customers, much less an interest that could supersede the interest of those customers'

28  home states in enforcing their own consumer protection, warranty, and other common law

— 10 —

jurisprudence to protect their residents and regulate conduct within their borders.  Accordingly, this Court should follow the majority approach, and dismiss Plaintiffs' claims to the extent they are advanced on behalf of non-California and non-New York consumers.

**5.      Plaintiffs Lack Standing To Assert Claims Related To Products They Did Not Purchase And Advertisements They Did Not See.**

Plaintiffs attempt to bring their lawsuit on behalf of *all* purchasers of *any* CamelBak eddy water bottle.  (FAC ¶¶ 1, 3, 31-33.)  Plaintiffs, however, only have a personal stake related to the particular water bottles they purchased, and any alleged injury they claim to have suffered is traceable only to those products.  By Plaintiffs' own admission, they each purchased only a single model of CamelBak-branded water bottles.  (*Id.* ¶¶ 5-6.)  Yet Plaintiffs purport to assert claims on behalf of purchasers of *every* CamelBak eddy model manufactured and sold over an unspecified period of time—and the FAC itself concedes that there are at least *nine* different models.  Plaintiffs summarily group these models together and call them the "CamelBak eddy."  (*Id.* ¶ 1.)  However, the FAC is devoid of any description of the features, designs, materials, or other characteristics of these different water bottles.  Notably, Plaintiffs do not even allege that the two bottles they purchased between them contain the same features or designs, or even suffer the same issue.

As numerous courts in this Circuit have determined in similar cases, plaintiffs who purchase a single product suffer a single injury.  They have not, however, suffered any economic or other injury related to other products, and therefore lack standing to bring suit alleging problems with products they never purchased.  *See Rugg v. Johnson & Johnson,* No. 17-cv-05010-BLF, 2019 WL 119971, at *2-3 (N.D. Cal. Jan. 7, 2019); *Larsen v. Trader Joe's Co.,* No. C 11-05188 SI, 2012 WL 5458396, at *5 (N.D. Cal. June 14, 2012) (plaintiffs did not purchase crescent rolls and as a matter of law "could not have suffered a particularized injury as required by Article III."); *Route*, 2013 WL 658251, at *4 (dismissing claims "to the extent they arise out of labels and advertising related to products Plaintiff never purchased"); *Ivie v. Kraft Foods Global, Inc.*, No. C–12–02554–RMW, 2013 WL 685372, at *5 (N.D. Cal. Feb. 25, 2013) (no pecuniary harm for non-purchased products); *Mlejnecky v. Olympus Imaging America Inc.*, No. 2:10-CV-02630 JAM-KHN, 2011 WL 1497096, at *4-5 (E.D. Cal. Apr. 19, 2011) (no standing to bring claims for products she did not purchase and for advertisements she did not see or rely upon); *Johns v. Bayer Corp.*, No. 09-cv-1935, 2010 WL

— 11 —

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   476688, at *4-5 (S.D. Cal. Feb. 9, 2010) ("plaintiff cannot expand the scope of his claims to include

2   a product he did not purchase or advertisements relating to a product that he did not rely upon").

3         The *Mlejnecky* decision is particularly on point because, as in this case, the named plaintiff's

4   issues were two-fold.   There, the named plaintiff purchased a Stylus camera after viewing an

5   advertisement in a magazine, and then visiting the defendant's website.  2011 WL 1497096, at *1.

6   After purchasing the camera, she dropped it, and the camera broke.  She claimed the defendant had

7   improperly represented its cameras as "shockproof," relied on those statements, and would not have

8   purchased the camera otherwise. *Id.* at *4.  But she took the claim too far—she filed suit on behalf

9   of purchasers of her camera model as well as those who purchased a different model, claiming that

10  both types of cameras had the same underlying defects and were advertised in the same manner.  *Id.*

11  Relying on federal precedent as well as the California Supreme Court's decision in *Kwikset Corp. v.*

12  *Super. Ct.,* the court recognized that California law requires that plaintiff "allege an economic injury

13  and must allege that the economic injury was caused by Defendant's unfair business practices."  *Id.*

14  (quoting *Kwikset*, 51 Cal.4th 310, 2011 WL 240278, at *5 (Cal. Jan. 27, 2011).)  The plaintiff could

15  not meet that burden with respect to the camera she did not purchase, and as she had not been injured

16  by any representations associated with that particular camera.  *Id.*  The same is true here—Plaintiffs

17  each purchased a single type of water bottle.  If they had suffered any unremedied injury, it would

18  have been confined to the purchased models *only*.[3]

19        The unpurchased products issue has arisen with some frequency in this district, and some

20  courts have articulated a modified approach, permitting class representatives to assert claims on

21  behalf of class members based on products they did not purchase only if the products and alleged

22  representations are "substantially similar."  *Rugg*, 2019 WL 119971, at *2.  Although Defendants

---

[3]       The *Mlejnecky* plaintiff cited statements made in general "marketing materials" and in "other places", but was held to lack standing to challenge representations "on which she did not specifically rely." *Id.* at *5. Here, the Complaint contains photographs of CamelBak eddy water bottles and their packaging, but Plaintiffs do not claim that those photographs represent the packaging that accompanied *their* water bottles.  (FAC ¶¶ 11-13.)  Nor do Plaintiffs specify which website representations they relied on.  (*Id.* ¶¶ 11, 14-15.)  Both Plaintiffs allege thy purchased their products on Amazon.com, but the Complaint references representations on Target and Bed Bath & Beyond web pages. (*Id.* ¶ 19.)  Notably, Plaintiffs do not allege that they even saw the representations they cite from the Amazon web page prior to purchasing their products.  (*Id.* ¶¶ 5-6.) Without such allegations, Plaintiffs lack standing to pursue claims based on these advertisements, packaging materials, or website excerpts.

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

dispute that this is the proper test, as similarity of products and representations cannot confer the constitutionally required injury upon a named plaintiff who never bought the product, Plaintiffs' allegations fall far short of establishing the type of similarity required in any event.  For example, the FAC does not allege that the different water bottle models have similar design or construction characteristics, does not allege that the other unpurchased bottles have similar "leak" issues, and does not allege that they are made of similar materials.  In short, the FAC does not equip this Court to evaluate whether any similarity exists across this line of water bottles, and therefore does nothing to establish Plaintiffs' standing vis a vis the seven-plus other CamelBak models at issue.  *See Kellman v. Whole Foods Market, Inc.*, 313 F. Supp. 3d 1031, 1052-54 (N.D. Cal. 2018).

**B.      The FAC Fails To State A Viable Claim.**

**1.      Plaintiffs Fail To Identify The Law They Seek To Invoke.**

Plaintiffs' warranty claims (Counts I-III), unjust enrichment claim (Count IV), negligent misrepresentation claim (Count VIII), and common law fraud claim (Count IX) should be dismissed because Plaintiffs (even after taking the opportunity to amend) never identify the law(s) they invoke.  Given the many differences that exist between California law and the laws of other states (including New York), some of which are discussed below, this is very much a distinction with a difference.  Because Plaintiffs have not identified the governing law, it precludes this Court from being able to properly evaluate these claims.  *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 910 (N.D. Cal. 2008) ("until Plaintiffs indicate which States' laws support their claim, the Court cannot assess whether the claim has been adequately pleaded); *Los Gatos Mercantile, Inc.*, 2014 WL 4774611, at *11; *Vinci*, 2018 WL 6136828, at *13-14 (dismissing Magnuson-Moss Warranty Act and express and implied warranty claims, fraudulent concealment, and unjust enrichment claims where plaintiff failed to identify governing law).

**2.      The Warranty Claims Fail Under California And New York Law.**

Even assuming that Plaintiffs intended to invoke California law for Stewart's claims and New York law for Keller's claims[4], there are fatal flaws with Counts I-III of the FAC.   First,

---

[4]      It is not this Court's or Defendants' burden to guess what laws Plaintiffs hope to invoke with respect to their warranty claims.  Nonetheless, a number of California federal courts have recognized that, under California's choice of law rules, a plaintiff's (or class member's) home state—the state where the individual

— 13 —

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Plaintiffs do not and cannot state a warranty claim because Defendants exercised their right to cure and fulfill all warranty obligations.  Plaintiffs' warranty claims (implied, express, and under the Magnuson-Moss Warranty Act ("MMWA") are premised on the same facts: they claim that "Defendants" warranted that their water bottles would be "spill-proof," but they leaked.  Yet Plaintiffs completely ignore the actual terms of the warranty.  It actually states:

> CamelBak will repair or replace at its discretion any manufacturing defect in these products free of charge.  The Got Your Bak™ Lifetime Guarantee does not cover damage caused by normal wear and tear***, accident (lost /stolen), combat damage, improper care or cleaning, non-standard usage or negligence.  Product must be purchased from an authorized CamelBak dealer and should be returned to us for evaluation.

(Maiden Dec. Exhibit 1).

Plaintiffs' warranty claims all suffer the same deficiency—Plaintiffs not only failed to provide proper pre-suit notice of an alleged defect, but Defendants performed and exceeded any and all warranty obligations by tendering replacement bottles **and** refunding the purchase prices. California federal courts have recognized that claims under California's UCC and the MMWA all require consumers to "provide the manufacturer with an opportunity to cure a failure to comply with a warranty" prior to suit.  *Oddo v. Arcoaire Air Conditioning & Heating*, 8:15-cv-01985-CAS(Ex), 2017 WL 372975, at *7 (C.D. Cal. Jan. 24, 2017).  These requirements "are intended to permit manufacturers to cure a defect before owners initiate legal action" and reduce damages."  *Id.* Serving statutory notice as a prerequisite for bringing a class action does not satisfy this requirement unless Defendants are given a *reasonable* opportunity to cure.  *Id.* at *7-8.  New York law is even more explicit, and requires would-be plaintiffs to provide ***reasonable*** pre-suit notice to *any* defendant in a breach of warranty action.  *See Tomasino v. Estee Lauder Co., Inc.,* 4 F. Supp. 3d 251, 260-61 (E.D.N.Y. 2014) (dismissing express and implied warranty claims brought by indirect,

in question purchased his/her product and allegedly suffered injury—has the strongest interest in applying its law to consumer fraud-type claims, including breach of warranty.  *Vinci*, 2018 WL 6136828, at *8-10 (stating "each [state] has an interest in applying its own laws to the [product] purchases within their borders," and, if a single state's law were applied regardless of a plaintiff's place of residence, "foreign states would be impaired in their ability to calibrate liability and foster commerce." (quoting *Mazza*, 666 F.3d at 592-93); *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1187 (9th Cir. 2001). S*ee also Freas v. BMW of North America, LLC*, 320 F. Supp. 3d 1126 (S.D. Cal. 2018) (warranty is a creature of contract and is governed by "the law and usage" of the place where it was performed or the place where it was made).

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  retail purchaser of cosmetics products *with prejudice* for failure to provide notice).  Nowhere in the

2  FAC do Plaintiffs allege that they provided either Defendant with reasonable notice, and they cannot

3  do so.  The only communication Plaintiffs had with Defendants, attached as Exhibit A to the FAC

4  and to the original complaint, was mailed **the same day Plaintiffs filed their original pleading,**

5  which could not possibly have been delivered pre-filing.  As Plaintiffs anticipated, Defendants did

6  not receive the certified mail until days later after Defendants' counsel received the lawsuit.[5]

7       Plaintiffs cannot refuse to allow Defendants to fulfill the warranty promised by refund and

8  replacement prior to filing a lawsuit.  Doing so not only deprives Defendants from doing exactly

9  what the law provides them a right to do, it undermines the underlying policy of the law to

10  encourage resolution of warranty issues without the need to resort to litigation, and without the

11  needless expense of financial and court resources.  Accordingly, California and New York law both

12  mandate that Counts I-III must be dismissed.[6]

13       Furthermore, vertical privity is required to assert an implied warranty claim under the

14  California UCC and the New York UCC.  *Clemens*, 534 F.3d at 1024; *Tomasino*, 44 F. Supp. 3d at

15  262 ("absent privity of contract, a purchaser cannot recover mere economic loss against a

16  manufacturer under a theory of breach of implied warranty.")  End consumers who buy from

17  retailers, as Plaintiffs concede they have done here, do not meet this standard.  *Id.*

18       Plaintiffs claim that they purchased from Amazon.com, but "understood that in making the

19  sale, the retailer was acting with the knowledge and approval of CamelBak and/or as the agent of

20  CamelBak" and that they "understood that her purchase involved a direct transaction between

21  [themselves] and CamelBak because [the] CamelBak eddy came with packaging and other materials

22  prepared by CamelBak."  (FAC ¶¶ 5-6.)  Plaintiffs' allegations concerning their mistaken

23  understanding fail.  There is no exception to the privity rule in New York, aside from cases of

24  _____

25  [5]     Moreover, Plaintiffs do not allege when they first began experiencing the purported problems with their water bottles, beyond that they "leaked during prior use." (FAC ¶¶ 5-6.)  Because Plaintiffs purchased their water bottles at least two years before filing suit, they, as the plaintiff in *Tomasino*, cannot establish that

26  they provided Defendants with *reasonable* notice. 44 F. Supp. 3d at 261-62.

27  [6]     MMWA claims are parasitic of state law warranty claims and rise and fall alongside them, dooming

28  Count I.  *See Acedo v. DMAX, Ltd.*, No. CV 15-02443 MMM (ASx), 2015 WL 12696176, at *27 (C.D. Cal. Nov. 13, 2015) (citing *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008)).

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

personal injury, which Keller has indisputably not sustained.  And under California law, a number of courts have flatly rejected any argument that allegations like Plaintiffs' create privity.  For example, in *In re Carrier IQ, Inc.*, the plaintiffs argued that they satisfied the privity requirement by (1) purchasing their products from the "apparent agents" of the manufacturers and/or (2) by having "direct dealings" with the manufacturer by virtue of written warranties.  78 F. Supp. 3d at 1105-06. Neither held water.  With respect to agency, the plaintiff in that case, like Stewart here, did not allege any facts supporting an agency relationship.  *Id.* at 1106.  The "direct dealings" based on written warranties argument was similarly unsuccessful because it improperly conflated express and implied warranty requirements.  *Id.*  "To allow the privity requirement in implied warranty actions to be 'relaxed' any time a plaintiff has alleged reliance on an express warranty would be inconsistent 'with clear California precedent that privity remains a requirement in implied warranty claims.'"  *Id.* (internal quotation omitted).  Plaintiffs' allegations are insufficient to overcome long-standing law from both California and New York barring implied warranty claims absent privity.

### 3. Plaintiffs' Unjust Enrichment Claim (Count IV) Is Not Cognizable.

Plaintiffs' unjust enrichment claim is subject to dismissal under both California and New York law.  A number of California courts have recognized that unjust enrichment is not a cognizable claim at all. *Robinson v. HSBC Bank USA,* 732 F. Supp. 2d 976, 987 (N.D. Cal. 2010) (unjust enrichment claim dismissed with prejudice because no such cause of action exists) (collecting cases). New York takes a somewhat different approach.   Although unjust enrichment claims are independent causes of action, they cannot co-exist alongside breach of warranty claims, which are contract-based claims that preclude a quasi-contractual claim like unjust enrichment.  *See Haag v. Hyundai Motor Am.,* 969 F. Supp. 2d 313, 317 (W.D.N.Y. 2013); *Gordon v. Hain Celestial Group, Inc.*, Case No. 16-cv-6526, 2017 WL 213815, at *5 (S.D.N.Y. Jan. 18, 2017).

### 4. Plaintiff Stewart's California Equitable Claims (Counts IV-VI) Should Be Dismissed.

#### a. Failure To Provide Mandatory Notice Requires Dismissal.

As noted above, neither Plaintiff provided Defendants with pre-suit notice of their claims. Instead, through their attorneys, they sent a letter by certified mail to Defendants dated the same day

they filed their lawsuit.  This failure creates an additional (and insurmountable) hurdle for Stewart, as she purports in Count V of the FAC to assert a CLRA claim explicitly seeking damages.  (FAC ¶ 77.)  It is indisputable that the CLRA's plain language requires would-be plaintiffs to provide a specific type of notice, sent in a specific manner, to defendants *at least 30 days* before filing suit.  Cal. Civ. Code § 1782(a).  This notice is a mandatory prerequisite.  *Id.* (stating that a consumer *shall* provide notice and demand for repair).  As a number of courts have noted, "[s]trict adherence to the statute's notice provision is required to accomplish the Act's goals of expeditious remediation before litigation."  *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1196 (citing *Outboard Marine Corp. v. Super. Ct.* 52 Cal. App. 3d 30, 40-41 (1975)).

Without this strict adherence, the notice provision's stated goals—facilitating early resolution of claims—cannot be served.  *See Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 950 (S.D. Cal. 2007) ("Permitting Plaintiff to seek damages first and then later, in the midst of a lawsuit, give notice and amend would destroy the notice requirement's utility and undermine the possibility of early settlement.")  Because prematurely filing a CLRA claim renders subsequent notice merely perfunctory, courts have dismissed improperly or un-noticed CLRA damages claims *with prejudice*. *Id.; Laster*, 407 F. Supp. 2d at 1196 (CLRA claim for damages dismissed with prejudice); *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1304 (S.D. Cal.) (same); *Janda v. T-Mobile, USA, Inc.*, No. C 05-03729 JSW, 2009 WL 667206, at *5 (N.D. Cal. Mar. 13, 2009) ("The Court stands by its prior ruling to dismiss with prejudice the damages claims under the CLRA").  And in situations when courts have dismissed without prejudice, it is typically because of an administrative error with the notice or where a complaint prematurely and only vaguely requests damages.  *Deitz v. Comcast Corp.,* 2006 WL 3782902, at *6 (N.D. Cal. Dec. 21, 2006) (complaint merely alluded to damages, which was stricken as premature)*; Whelan v. BDR Thermea*, No. C-11-02146, 2011 WL 6182329, at *7 (N.D. Cal. Dec. 13, 2011).  This is not such a case.  In fact, Stewart does not even purport to seek injunctive relief in Count V, so the request for damages can hardly be construed as vague, ancillary, or an administrative error.  (FAC ¶¶ 69-77.)  Moreover, in the *Lepkowski* case, Plaintiffs' counsel complied with the 30-day notice requirement—this was not an unknowing mistake or clerical error.  This is a deliberate violation of the statute.  Count V should be dismissed with prejudice.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

#### b.      Stewart Already Has Adequate Remedies At Law.

Stewart's CLRA, UCL, FAL, and unjust enrichment claims seek equitable relief.  However, courts in this district have "routinely" dismissed claims in cases like these, where a plaintiff simultaneously seeks legal remedies.  *Mullins v. Premier Nutrition Corp.,* No. 13-cv-01271-RS, 2018 WL 510139, at *2 (N.D. Cal. Jan. 23, 2018).  "It is a basic doctrine of equity jurisprudence that courts of equity should not act … when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief."  *Morales v. TransWorld Airlines, Inc.*, 504 U.S. 374, 381 (1992).  UCL claims, which are wholly equitable in nature, are subject to these "fundamental principles."  *Prudential Home Mortg. Co. v. Superior Ct.*, 66 Cal. App. 4th 1236, 1249-50 (1998).  Remedies under FAL actions are similarly limited to injunctive relief and restitution, and should be dismissed—at the pleading stage—when an adequate remedy at law is available.  *Pfizer Inc. v. Superior Ct.*, 182 Cal. App. 4th 622, 631 (2010).  Courts have made similar rulings in dismissing unjust enrichment claims.  *In re Ford Tailgate Litig.,* No. 11-CV-2953-RS, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014).

*Fonseca* is directly on point.  The court recognized that when "seeking redress for a wrong, a litigant may obtain equitable *or* legal remedies."  2016 WL 4698942, at *7 (emphasis added).  This is an election, and to seek equitable relief, the plaintiff "must establish that there is no adequate remedy at law available."  *Id.* (quoting *Philips v. Ford Motor Co.*, No. 14–CV–02989–LHK, 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015)).  Additionally, "where an equitable relief claim relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action."  *Id.* (quoting *In re Ford*, 2014 WL 1007066, at *5.)  Because the plaintiff in *Fonseca* had asserted a number of other claims, including breach of warranty, negligent misrepresentation, and fraud, the court dismissed his CLRA, UCL, FAL, and unjust enrichment claims.  *Id.* at *7-8.

Stewart's claims in Counts IV-VII suffer these very deficiencies.  She brings *nine* claims against Defendants here, including the same legal claims articulated in *Fonseca* that doomed that plaintiff's equitable CLRA, FAL, and UCL counts.  As in that case, the plain language of the FAC reveals that the "factual predicates" of Stewart's statutory and unjust enrichment claims are identical

— 18 —

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   to her warranty and common law fraud counts, and they are all premised on the allegation that

2   Defendants misrepresented her water bottles to be "spill-proof."  (*See* FAC ¶¶ 64-92).  With plenty

3   of adequate remedies at law (regardless of whether she can prove she is entitled to them), she simply

4   is not entitled to assert claims for equitable relief.

5           **5.      The Alleged Fraud Claims Are Not Pled With Sufficient Particularity.**

6           Plaintiffs' California and New York statutory claims, as well as their common law claims

7   sounding in fraud[7] (including negligent misrepresentation) fail to comply with Rule 9(b)'s

8   heightened pleading standard, which obligates Plaintiffs to plead the "circumstances constituting

9   fraud" with particularity, including the "who, what, when, where, and how of the misconduct

10  charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).[8]

11          **a.      Improper Lumping Of Defendants.**

12          Plaintiffs' FAC lodges myriad statutory and common law fraud-based claims against two

13  independent entities—CamelBak Products and CI.   Throughout the FAC, however, Plaintiffs

14  repeatedly treat Defendants as a single entity, referring to them collectively as "CamelBak" or

15  "Defendants."  Plaintiffs allege their conclusion that Defendants "jointly make decisions" regarding

16  marketing and advertising, allege that CI does not "maintain an independent social media account"

17  so that only a single "CamelBak" LinkedIn account exists, and market products under the

18  "CamelBak" brand.  (FAC ¶ 7.)  Plaintiffs do not, however, plead any facts about how Defendants

19  supposedly worked together to perpetuate the alleged fraudulent activity or any other facts

20  

21  [7]      Although only the "fraud" prong of the UCL is premised on false or deceptive conduct, to the extent Plaintiffs' UCL claims rest on the "unfair" and "unlawful" prongs, they suffer the same fate.  *See Sue Shin v. Campbell Soup Co.*, Case No. CV 17-1082-DMG (JCx), 2017 WL 3534991, at *5 (C.D. Cal. Aug. 9, 2017) (dismissing "unlawful" UCL claim because it was premised on violations of the FAL and CLRA, which were dismissed for failure to identify a fraudulent or misleading representation); and *8 (dismissing "unfair" UCL claim because the allegations overlapped entirely with her claim under the "fraudulent" prong).  Stewart's "unfair" and "unlawful" UCL claims are premised on the same conduct.

25  [8]      Plaintiff Keller's NY GBL claims in Counts X and XI are also subject to Rule 9(b).  Federal courts throughout California have held that "regardless of whether federal courts in other states apply Rule 9(b) to their state consumer protections statutes, federal courts in California are bound to apply Ninth Circuit precedent," set forth in *Kearns*, which holds that regardless of the form of the claim, if the substance is fraud, Rule 9(b) governs.  *Gold v. Lumber Liquidators, Inc.*, No. 14-cv-05373-THE, 2015 WL 7888906, at *12 (N.D. Cal. Nov. 30, 2015); *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 957 (C.D. Cal. 2012) (applying Rule 9(b) to New York consumer protection claims).

— 19 —

permitting the Court to ignore corporate separateness.  Rule 9(b)—and Rule 8 for that matter— prohibits this improper group pleading.  *See Estrada v. Caliber Home Loans, Inc.*, 172 F. Supp. 3d 1108, 1117 (C.D. Cal. 2016) (collecting cases holding that "undifferentiated pleading against multiple defendants is improper").  In cases involving multiple defendants, and particularly when those claims involve fraud allegations, plaintiffs must "differentiate their allegations…and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *King v. Nat'l Gen. Ins. Co.*, 129 F. Supp. 3d 925, 943 (N.D. Cal. 2015).  "Allegations that 'everyone did everything' are insufficient." *Id.* (quoting *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011)).  By treating CamelBak Products and CI as a single entity, Plaintiffs failed to inform them of the specific allegations pertaining to their respective roles in the alleged fraud.

### b.     Failure To Plead "Who, What, When, Where, And How."

Under *Kearns* and its progeny, plaintiffs asserting fraud claims, including CLRA, FAL, and UCL claims and consumer fraud claims under other states' laws, are subject to Rule 9(b)'s heightened pleading standard.   567 F.3d at 1125-27 ("A plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis" of its claims.  In such circumstances "the claim is said to be grounded in fraud…and the pleading as a whole must satisfy" Rule 9(b)); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1122-23 (C.D. Cal. 2010).  The same is true of negligent misrepresentation claims when premised, as here, on the same conduct underpinning a fraud claim.  *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003); *Kearns*, 567 F.3d at 1125 (entire pleading must satisfy 9(b) when based on "unified course of fraudulent conduct").  Rule 9(b) requires specifics—plaintiffs must not only identify the particular representations at issue, but who made them, when they were made and seen, and how they were false.  *Kearns*, 567 F.3d at 1124.  The FAC falls far short of this standard.

Although Plaintiffs allege throughout the FAC that "Defendants" mischaracterized the "eddy" branded water bottles as "spill-proof" or having a "spill-proof bite valve," the only support for these claims are the cited photographs and website snapshots. (FAC ¶¶ 5-6, 11-18.)[9]  Plaintiffs do

---

[9]     Plaintiffs cite a number of third-party descriptions of the CamelBak eddy water bottles in Paragraph 19 of the FAC, but do not provide any facts suggesting that Defendants can be linked to or liable for them.

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

not allege which defendant they claim to have made *any* of the representations at issue.  Nor do Plaintiffs allege when the alleged representations they viewed and relied upon were made, much less *when* they saw and relied upon them.  There is nothing in the FAC stating the date the various photographs cited therein were captured, much less which CamelBak eddy models are featured in the photographs.  (*Id.* ¶¶ 12-14.)  The snapshots from the website are similarly uncited and undated. (*Id.* ¶¶ 15-18.)   Although Plaintiffs claim to have viewed "labeling, packaging, and marketing materials" for their water bottles (*id.* ¶ 5-6), they do not describe them in any detail, including when they viewed them and where.  This is particularly critical given the facts of this case—Plaintiffs purchased their water bottles from third parties online, but the FAC contains no details regarding the representations they viewed on Amazon.com (or the identity of the person making the representations) or the images they saw prior to purchasing their products.  Plaintiffs' complete failure to articulate any details of Defendants' allegedly fraudulent conduct defeats each of their fraud-based claims.  *Kearns*, 567 F.3d at 1125-27; *Yumul*, 733 F. Supp. 2d at 1123-24 (failure to allege when she saw or heard representations, that packaging was consistent throughout class period, or the packaging on the product she purchased doomed FAL, UCL, CLRA, and fraud claims).

### c.       Plaintiffs Have Not Sufficiently Alleged Actual Knowledge.

To state claims based on fraud and deceptive acts, Plaintiffs, under California or New York law, must show that Defendants knew of an alleged defect at the time Plaintiffs purchased their water bottles.  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012); *Nalthel v. Siegal*, 592 F. Supp. 2d 452, 468-69 (S.D.N.Y. 2008) (fraud plaintiff must allege actual knowledge, and "allegations of constructive knowledge or recklessness are insufficient.")  Attempting to satisfy this requirement, Plaintiffs rely on a number of alleged consumer complaints and purported website snapshots, which they claim demonstrate Defendants' "awareness" that its products are not "spill-proof."  (FAC ¶¶ 21-30.)  Plaintiffs' reliance on these items is misplaced for a number of reasons.

First, it is well established that consumer complaints, on their own, "are insufficient to show that [a manufacturer] had knowledge [of the defect]."  *Wilson*, 688 F.3d at 1147.   Customer complaints establish only that customers are complaining—not that defects actually exist or that the defendant manufacturers are aware of defects.  *Id.*; *Baba v. Hewlett-Packard Co.*, No. C 09–05946

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

RS, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011).  This is particularly true where, as here, the customer complaints cited in the pleading do not identify a particular defect, provide necessary details of the alleged problems, and do not specify the product model being complained of.  *See Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 799-800 (N.D. Cal. 2019) (plaintiff's notice allegations insufficient where cited customer complaints failed to identify product model and specific defect at issue); *Garcia v. General Motors LLC*, Case No. 1:18-cv-01313-LJO-BAM, 2018 WL 6460196, at *12 (E.D. Cal. Dec. 10, 2018) (plaintiff's failure to state who made complaints, what specific products were involved in the complaints, to whom the complaints were made, and the specific dates of the complaints were insufficient to establish defendant's awareness of defect).  The consumer complaints Plaintiffs referenced do not provide the identity of the individuals who made the complaints, and—critically—do not identify the product model at issue. These vague allegations are insufficient to establish that Defendants were aware that Plaintiffs' particular water bottles had a particular defect prior to the date of sale, much less achieve compliance with Rule 9(b).

In Paragraph 27 of the FAC, Plaintiffs cite what purports to be a section of a CamelBak website, in which customers are cautioned regarding special considerations in using CamelBak eddy water bottles in high altitudes. Plaintiffs claim the language from the website is evidence that Defendants have acknowledged that their spill-proof water bottles contain defects and "leak," but the quoted section does not even say the water bottles leak at high altitudes, let alone that they contain defects. Neither does the Facebook page vaguely detailed in Paragraph 28, which simply states that users must take special care when flying with their water bottles because of the pressure present in high altitudes.  "Defendants online FAQs," cited in Paragraph 29, simply advise customers that they "might have an object trapped in the vent valve" if they are experiencing a leak. This is obviously very different from an admission that water bottles leak as sold or during normal use.

Without sufficient factual allegations stating Defendants' knowledge of alleged defects to support the fraud claims, Plaintiffs cannot meet their pleading burden, and Counts V-XI are subject to dismissal under Rule 12(b)(6) and 9(b).

**6.      The Economic Loss Rule Bars Plaintiffs' Negligent Misrepresentation Claim.**

Plaintiffs' negligent misrepresentation claim is premised on the same allegations that underlie their other causes of action—disappointed expectations in the performance of their water bottles. (FAC ¶¶ 93-100.)  The economic loss rule was intended to prevent precisely these types of claims, which would dissolve "the law of contract and the law of tort" into one another.  *United Guar. Mortg. Indemn. Co. v. Countrywide Fin. Corp*, 660 F. Supp. 2d 1163, 1180 (C.D. Cal. 2009). The rule "requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Ladore v. Sony Computer Entmt. Am., LLC*, 75 F. Supp. 3d 1065, 1075 (N.D. Cal. 2014).  The rule unquestionably applies where, as here, the alleged misrepresentations were made in marketing materials and occurred in the context of creating a sales contract.  *Id.* (economic loss rule barred negligent misrepresentation claim arising out of promises regarding a video game system's graphics quality); *Tasion Ommunications, Inc. v. Ubiquiti Networks, Inc.*, No. C-13-1803 EMC, 2013 WL 4530470, at *9-10 (N.D. Cal. Aug. 26, 2013) (similar claim barred where challenged misrepresentations were made in marketing materials regarding product qualities).

Keller's claim, governed by New York law, suffers an additional problem.  Under New York law, the economic loss rule applies with equal or greater force.  *See Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015); *Gordon*, 2017 WL 213815, at *4 ("Under New York's economic loss rule, however, a plaintiff may only assert a claim for negligent misrepresentation if he or she alleges personal or property damage, as opposed to economic loss.") In addition, an ordinary sales transaction does not give rise to a claim for negligent misrepresentation.  To successfully state a claim under New York law, a plaintiff must, among other things, allege that the "defendant had a duty, as a result of a special relationship, to give correct information." *Hydro Inv'rs. Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).  New York courts have consistently held that "a special relationship does not arise out of an ordinary arm's length business transaction between two parties." *U.S. Express Leasing, Inc. v. Elite Tech. (N.Y.), Inc.*, 928 N.Y.S.2d 696, 700 (1st Dept. 2011; *see also Gordon*, 2017 WL 213815, at *7 (dismissing negligent misrepresentation claim in consumer fraud case where plaintiff failed to allege that "the parties shared a level of trust and confidence beyond that typical of counter-parties in arms-length

consumer transactions); *Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029 (NSR), 2015 WL 2168374, at *14 (S.D.N.Y. May 7, 2015) ("Defendants' obligation to label products truthfully does not arise from any special relationship"). Keller, like the plaintiffs in these cases, has not alleged that there is privity or any "special relationship" between him and Defendants that might elevate his purchase above an ordinary consumer transaction.

### 7. The New York General Business Law Claims Fail To Sufficiently Allege a Recoverable Injury.

The FAC's final two counts assert violations of two provisions of the New York General Business Law ("NYGBL"). Both claims require that plaintiff suffer a cognizable injury as a result of a challenged deceptive act. *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 141-42 (E.D.N.Y. 2018). But not just any type of injury will do. Deception which leads to the purchase of a product the consumer would not otherwise have bought is not cognizable under NYGBL Sections 349 and 350. *Izquierdo v. Mondelez International, Inc.*, Case No. 16-cv-04697 (CM), 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) (citing *Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 898 (N.Y. 1999)). Instead, a plaintiff must, with proper factual support, allege that Defendants charged a higher price for the product than they ordinarily would have been able to, depriving the plaintiff of the full purchase value. *Id.*

Keller claims that he would not have purchased the water bottle on the same terms had he known that the "spill proof" claims were not true and that he paid a premium for the bottle. (FAC ¶¶ 116, 127.) Despite amending to correct this issue, Keller still lacks sufficient factual support. *Colella* and *Izquierdo* involve allegations strikingly similar to Keller's here, and both hold that simply alleging that plaintiff paid a "premium" for the product at issue is not sufficient to state a claim. *Izquierdo*, 2016 WL 6459832, at *7 (dismissing claims under both Sections 349 and 350); *Colella*, 348 F. Supp. 3d at 143 (same). In *Colella,* the plaintiff claimed that the defendant "charges a premium for its products and specifically markets them in a premium location of its retailers; thus, Plaintiff and members of the Class paid more than they normally would have for comparable products." *Id.* This was too conclusory, the court held. To properly assert an injury cognizable under the NYGBL, plaintiff would have had to allege facts regarding what the price premium was,

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

– 24 –

the price of non-premium products, and would have to have alleged that the *defendant* set the price premium allegedly paid.   *Id. Izquierdo* involved similar allegations—despite claiming that the plaintiff purchased candy for a "premium price of $4.29 or more" and citing to other types of candy sold for less money, the court held that without additional facts, the plaintiff had merely pleaded that he was injured because he was deceived.  2016 WL 6459832, at *7.  The plaintiff's failure to allege that the defendant, rather than the third-party retailer, set the price paid was also fatal.  *Id.*

Keller's allegations here suffer from the same failures, and remains indistinguishable from *Izquierdo*.  The FAC superficially attempted to cure this deficiency by adding a single paragraph, which assumes but does not allege that prices are established by ounce, and then compares the price some unidentified seller charges for a 20 oz. CamelBak eddy insulated bottle (which neither Plaintiff claims to have purchased) with the price set by another unidentified seller for a 24-ounce Polar bottle from a different manufacturer, without specifying any of the features of that bottle.  (FAC ¶ 4.)[10] The fact that Keller did not purchase a CamelBak eddy Insulated bottle is critical—the FAC makes no attempt to describe a price premium *he* claims to have paid on the different bottle he purchased from Amazon for $12.82.  (*Id.* ¶ 5.)  This, as the comparison found insufficient in *Izquierdo,* "tells the Court nothing about the value" of the bottle, "or whether the cost" of the bottle was "inflated" through deceptive conduct.  2016 WL 6458932, at *7.  And despite amending, Keller *still* does not claim that Defendants, rather than Amazon.com, set the price he paid for his water bottle.   Without sufficient allegations of the required injury, neither NYGBL claim can survive dismissal.

## IV.   <u>CONCLUSION</u>

For all of the foregoing reasons, the Court should dismiss Plaintiffs' First Amended Complaint in its entirety, with prejudice, and grant to Defendants any such other and further relief as the Court deems proper.

---

[10]     Plaintiffs do not actually allege what the table is supposed to represent. While not a basis for dismissal, the deep flaw of Plaintiffs' logic is quickly illustrated by a simple internet search for CamelBak and Polar water bottles. It reveals a wide variety of sales prices including prices as low as $4.99 for the 25 oz CamelBak. The assumption that prices are set per ounce is refuted by Plaintiffs' allegations in paragraphs 5 & 6 that Keller paid **less** for his 25 oz water bottle than Stewart paid for her 12 oz water bottles.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Dated: March 4, 2020

By: */s/ Todd O. Maiden*

TODD O. MAIDEN (SBN CA 123524)
TMAIDEN@ReedSmith.com
Reed Smith LLP
101 Second Street, Suite 1800
San Francisco, CA 94105
Phone: +1 415 543 8700
Fax:     +1 415 391 8269

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

**CERTIFICATE OF SERVICE**

I, Todd O. Maiden, an attorney, hereby certify that on March 4, 2020, I caused a true and correct copy of the foregoing MOTION TO DISMISS PLAINTIFFS' FIRST AMENDMENT CLASS ACTION COMPLAINT to be filed and served electronically via the ECF system of this Court. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.

DATED: March 4, 2020                          /s/ Todd O. Maiden

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware